RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 04a0414p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

WANDA BIRCH,

        *Plaintiff-Appellant,*

    *v.*

CUYAHOGA COUNTY PROBATE COURT; JOHN J.
DONNELLY, Presiding Judge,

        *Defendants-Appellees.*

No. 03-3228

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 01-01694—Ann Aldrich, District Judge.

Argued: June 10, 2004

Decided and Filed: December 1, 2004

Before: KEITH, CLAY, and GIBBONS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Caryn M. Groedel, CARYN, GROEDEL & ASSOCIATES, Beachwood, Ohio, for Appellant. Elizabeth S. Rudnick, ULMER & BERNE, Cleveland, Ohio, for Appellees. **ON BRIEF:** Caryn M. Groedel, CARYN, GROEDEL & ASSOCIATES, Beachwood, Ohio, for Appellant. Elizabeth S. Rudnick, Stephanie E. Trudeau, Thomas H. Barnard, Jr., ULMER & BERNE, Cleveland, Ohio, Linda L. Woeber, MONTGOMERY, RENNIE & JONSON, Cincinnati, Ohio, for Appellees.

    CLAY, J., delivered the opinion of the court, in which KEITH, J., joined. GIBBONS, J. (pp. 14-18), delivered a separate opinion concurring in part and dissenting in part.

---

## OPINION

---

    CLAY, Circuit Judge. Plaintiff Wanda Birch, a magistrate in the Release of Assets Department of the Cuyahoga County Court of Common Pleas Probate Court ("Probate Court"), appeals the January 27, 2003 order of the United States District Court for the Northern District of Ohio, granting summary judgment in favor of the Probate Court and Defendant Judge John J. Donnelly, Presiding Judge of the Probate Court, on her claims for race and sex discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a), and under the Ohio Civil Rights Act, OH. REV. CODE ANN. § 4112.02; retaliation under 42 U.S.C. § 1983 and under the Ohio Civil Rights Act, OH. REV. CODE ANN. § 4112.02; violations of the Equal Pay Act, 29 U.S.C. § 206(d)(1); age discrimination, in violation of the Age Discrimination in

Employment Act of 1967, 29 U.S.C. § 621 *et seq.*; and for intentional infliction of emotional distress.  For the reasons that follow, we **AFFIRM** the dismissal of Birch's Title VII and Equal Pay Act claims, as well as her claims for race discrimination, age discrimination, and intentional infliction of emotional distress. We **REVERSE**, however, the district court's dismissal of her sex-based wage discrimination claim under the Ohio Civil Rights Act.

## I.

### A.        Substantive Facts

On September 7, 1993, Plaintiff Wanda Birch was hired as a Probate Court magistrate after interviewing with Probate Court Administrator/Magistrate John Polito, as well as Judge Donnelly, Presiding Judge.[1]   The Probate Court has six departments:  Front Office, Accounts, Adoption, Guardianship, Psychiatric, and Release of Assets.  Birch was hired as a Release of Assets magistrate and continues to serve in that capacity.

In 1998, the magistrates of the Domestic Relations Division of the Cuyahoga County Court of Common Pleas conducted a study of the salary levels of all the magistrates in each of the Divisions of the Court of Common Pleas as part of a state-wide survey of magistrate positions.  The salary survey showed that the average salary of female Probate Court magistrates was lower than the average salary of male Probate Court magistrates, and that the highest paid female magistrate was earning less than the lowest paid male magistrate.  Birch's salary was revealed to be the lowest of any of the magistrates in any of the divisions of the Cuyahoga County Court of Common Pleas.  Upon learning the results of the salary survey, the four female Probate Court magistrates, including Birch, requested a meeting with Judge Donnelly and Magistrate Polito.

The four female magistrates met with Judge Donnelly and Magistrate Polito in October, 1998.  In response to Birch's concern about her low salary, Judge Donnelly stated that certain departments in the Probate Court had more responsibility and therefore justified higher salaries compared to the Release of Assets Department.   According to Birch, Judge Donnelly added, "I don't know how I would make these salaries fair.  I rely on the men to do the important work of the Court."

Birch then asked Judge Donnelly why she was the lowest paid Magistrate at the court and whether he had a concern about her work.  Judge Donnelly responded that he did not "trust her work," adding, "I would prefer that you not work here."[2]  When Birch asked if she was being fired, Judge Donnelly responded that she was not fired, only that he would prefer that she not work at the court.  He also allegedly told Birch, "I don't have to hire women," and told all of the female magistrates that if they do not want to work at the court, they do not have to do so.

Birch alleges that following the meeting with Judge Donnelly, she was denied spill-over work from the Front Office Department for a period of time, as was Magistrate Heidi Koenig, who also had participated in the meeting with Judge Donnelly.  Magistrate Koenig subsequently was promoted to a position in the Front Office in 2001.  Birch also alleges that her work was subject to greater scrutiny in retaliation for her complaint about her lower salary.

---

[1]Birch was actually hired as a general referee in the Release of Assets Department.  Referees are now called magistrates.

[2]According to Birch, Judge Donnelly said in anger, "You're fired."   When she asked for a reason for the termination, Judge Donnelly would not provide one, only saying that he would speak to Birch in private.  After he calmed down he said, "That's okay, you can stay."

**B.       Procedural History**

On July 12, 2001, Birch filed a complaint against the Probate Court and Judge Donnelly, alleging race, sex and age discrimination, retaliation, and intentional infliction of emotional distress. On January 27, 2003, the district court granted Defendants' motions for summary judgment.  Although the district court rejected Defendants' argument that Birch is not covered by Title VII, the ADEA, and the Equal Pay Act, it dismissed the race, sex and age discrimination claims on the ground that Birch had not shown an adverse employment action with respect to her failure-to-promote claim or that persons outside of her protected classes had been treated differently.  With respect to Birch's wage discrimination claims brought under Title VII and the Ohio Civil Rights Act, the court held that Defendants' reasons for Birch's lower wages compared to the male magistrates on the Probate Court were legitimate and undisputed.  The court stated:

> The various magistrates perform widely divergent tasks, and many of these tasks are far more challenging and time-consuming than others.  In the present case, while Birch was the lowest paid magistrate, it is uncontestably established before this Court that she lacked any job experience when she was hired, was the least senior magistrate, completed less challenging and less time-consuming work than other supervisory and non-supervisory magistrates, and performed in a manner that was substantively dissatisfactory to her employer.

As to her wage discrimination claim brought under the Equal Pay Act, the court held that Birch's magistrate position was not substantially equal to the higher-paid magistrate positions, and, in any event, the wage differential was justified on the basis of seniority and merit.  The court dismissed the intentional infliction of emotional distress claim because Birch had failed to establish that Judge Donnelly's conduct toward her was sufficiently outrageous under Ohio law.  The court never directly addressed Birch's retaliation claim, but the court's summary judgment order implicitly dismissed that claim as well.

On appeal, Birch has not contested the district court's dismissal of her race and age discrimination claims, nor her failure-to-promote claim and her claim for intentional infliction of emotional distress. Therefore, she has waived review of those portions of the district court's order.  The remaining issues for review are whether the district court erred in dismissing Birch's claim for sex-based wage discrimination, whether brought under Title VII, the Equal Pay Act or the Ohio Civil Rights Act, and in dismissing her claims for retaliation under § 1983 and the Ohio Civil Rights Act.

## II.

**A.       Standard of Review**

This Court reviews *de novo* a district court's decision to grant summary judgment. *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001).  Summary judgment must be granted if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A dispute over a material fact is only a "genuine issue" if a reasonable jury could find for the nonmoving party on that issue. *Cockrel*, 270 F.3d at 1048 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In reviewing the district court's grant of summary judgment, this Court must view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**B.     Birch's Coverage by Title VII and the Equal Pay Act**

    **1.     Title VII**

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any *individual*, or otherwise to discriminate against any *individual*" because of sex.  42 U.S.C. § 2000e-2(a)(1) (emphasis added).[3]  Notwithstanding the statutory language that refers to "individual[s]," courts have limited Title VII's protections to individuals who are "employees."  *See Llampallas v. Mini-Circuits, Lab, Inc.,* 163 F.3d 1236, 1242 (11th Cir. 1998)  ("The statute does not define 'any individual,' and although we could read the term literally, we have held that only those plaintiffs who are 'employees' may bring a Title VII suit.") (collecting cases).  According to the statutory language:

> [t]he term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision.

42 U.S.C.A. § 2000e(f).

Defendants argue that Birch is not an "employee" for Title VII purposes and, therefore, she cannot sue under that statute.  They argue that she is an exempt employee because she is not subject to Ohio's civil service laws and because she either serves on the personal staff of an elected state official (Judge Donnelly) or is an appointee on the policy-making level.  Since it is undisputed that Judge Donnelly is an elected official, *see* OH. REV. CODE ANN. § 2101.02, and Birch's magistrate position is not subject to the civil service laws of Ohio,[4] the question is whether Birch's position as a magistrate in the Release of Assets Department satisfies either the "personal staff" exemption or the "policymaker" exemption.

    **a.     "Personal staff" exemption**

A state government employee, not subject to the civil service laws, is not an "employee" for Title VII purposes if she works on an elected official's "personal staff."  42 U.S.C. § 2000e(f).  The following, non-exhaustive list of factors is relevant to this determination:

> (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

---

[3] It also unlawful for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any *individual* of employment opportunities or otherwise adversely affect his status as an employee," because of sex.  *Id.* § 2000e-2(a)(2) (emphasis added).

[4] *See* OH. REV. CODE. ANN. § 124.11(A)(9) (providing that "persons employed by and directly responsible to elected county officials or a county administrator and holding a fiduciary or administrative relationship to such elected county officials or county administrator" are not classified as civil servants); *see also Dyer v. Radcliffe,* 169 F. Supp.2d 770, 774 (S.D. Ohio 2001) (noting that  magistrate in Ohio Court of Common Pleas' Juvenile Division was not a civil servant).

*Walton v. State of Mich.,* No. 90-1116, 1990 WL 182033, at *2 (6th Cir. Nov. 23, 1990) (quoting *Teneyuca v. Bexar County,* 767 F.2d 148, 151 (5th Cir. 1985)). "'The 'personal staff' exception becomes less applicable the lower the particular employee's position because the exception was primarily intended to exempt the elected official's immediate subordinates or those who are his first line advisors." *Montgomery v. Brookshire*, 34 F.3d 291, 296 (5th Cir. 1994) (internal quotation marks and citations omitted). Despite the fact that the exemption is to be construed narrowly and involves a highly factual inquiry, *Teneyuca*, 767 F.2d at 152, summary judgment nevertheless may be appropriate when there is no genuine issue of material fact as to the applicability of the relevant factors.

Upon consideration of these factors, we hold as a matter of law that Birch is exempt from Title VII as a member of Judge Donnelly's "personal staff." First, Judge Donnelly is an elected official, and Birch, like all the other magistrates at the Probate Court, serves at his pleasure. Second, Birch is personally accountable only to Judge Donnelly, who is responsible for hiring and supervising the magistrates. Third, as Magistrate Heidi Koenig testified at deposition, Birch (like all the other Probate Court magistrates) represents both the Probate Court and Judge Donnelly in the eyes of the public. Indeed, Birch admitted as much in a letter to Judge Donnelly prior to the commencement of this litigation. *See* J.A. 276 ("I want to thank you for the opportunity you give me to serve you and the public as your magistrate. I always work diligently to represent you and this court as one of the best Judges and courts in Cuyahoga County."). Fourth, Judge Donnelly exercises a considerable amount of control over Birch's position because he has the power to hire, fire, and supervise her performance; controls Birch's pay raises; relies on Birch to perform work that he is not available to do; and relies on Birch's recommendations in carrying out court business. Fifth, the record indicates that Birch reports directly to Judge Donnelly; she is his immediate subordinate.

As to the sixth factor, the evidence suggests that Birch has an intimate working relationship with Judge Donnelly because Birch is only one of ten magistrate judges at the Probate Court, and Judge Donnelly depends on Birch to complete the work of the court. Birch contends that the relationship is not intimate because Judge Donnelly has provided very little by way of hands-on or day-to-day interaction with Birch. Her contention, however, is supported only by her vague, conclusory denial of regular contact with Judge Donnelly. *See* J.A. 325 ("My contact with management on a day-to-day basis occurs much more frequently with Magistrate Polito than with … Judge Donnelly."). The undisputed facts remain that Birch, like the other magistrate judges, represents Judge Donnelly in the eyes of the public, completes work that Judge Donnelly cannot himself complete, and makes substantive recommendations to Judge Donnelly on matters before the court. Thus, Birch's relationship with Judge Donnelly is intimate in the sense that their respective duties are heavily interdependent. Their relationship does not lose its intimate status merely because Birch is afforded a necessary degree of autonomy in her work, such that she and Judge Donnelly need not interact on a daily basis. Based on the totality of the factors, we hold that Birch is exempt from Title VII's coverage as a member of Judge Donnelly's personal staff.

### b.          "Policy making employee" exemption

Defendants also argue that Birch is exempt from Title VII as "an appointee on the policy making level," relying on the district court decision in *Dyer v. Radcliffe, supra*. In that case, Plaintiff James Dyer, a referee (the same as a magistrate) was appointed by Judge Gerald Radcliffe of the Ohio Court of Common Pleas to serve in the Juvenile Division. The court held that Dyer was a policy-making employee, unprotected by Title VII, reasoning as follows:

> Under Ohio law, "the juvenile judge may appoint … referees …." O.R.C. § 2151.16. The Sixth Circuit has determined that "the referee effectively makes policy for, or suggests policy to the court on each occasion that he resolves a dispute in the court's name or recommends a disposition to the judge." *Mumford v. Basinski,* 105 F.3d 264, 272 (6th Cir.1997). In addition, Dyer's referee position, which can be described as one "directly responsible to [an] elected county official[ ] … and holding a fiduciary or administrative relationship to such elected county official [ ] ….[,]" is also exempt from the civil service

laws.  O.R.C. § 124.[11](A)(9).  Because Dyer's position was an appointee on the policy making level, and he is exempt from the civil service laws of Ohio, he is not an employee under Title VII.  Thus, he is not qualified to bring a suit under Title VII against Common Pleas Court or Judge Radcliffe.

*Dyer,* 169 F. Supp.2d at 774-75.

As was the case in *Dyer*, Judge Donnelly, an elected official, has the authority to appoint magistrates like Birch, who are exempt from the civil service laws.  *See* OH. REV. CODE ANN. § 2101.01 ("The probate judge shall employ and supervise all clerks, deputies, magistrates, and other employees of the probate division."); *id.* § 124.11(A)(9) (providing that "persons employed by and directly responsible to elected county officials or a county administrator and holding a fiduciary or administrative relationship to such elected county officials or county administrator" are not classified as civil servants).  Further, as noted in *Dyer*, this Court in *Mumford* held that the inherent duties of a magistrate in the service of an Ohio Domestic Relations Court involve policymaking:

> Unquestionably, the inherent duties of an Ohio domestic relations court referee entail a relationship of confidence between the referee and the judge(s) which he serves. The referee is privy to confidential litigation materials and internal court communications in the discharge of his duties, and further maintains a personal confidential relationship with the judge(s) which [sic] he serves.  *See Blair[ v. Meade,* 76 F.3d 97, 101 (6th Cir. 1996)]; *Balogh v. Charron,* 855 F.2d 356 (6th Cir.1988). Moreover, the referee effectively makes policy for, or suggests policy to, the court on each occasion that he resolves a dispute in the court's name or recommends a disposition to a judge. Consequently, his supervising judge must be convinced that the judgment capabilities of the referee, and the confidential relationships that arise as a result of the intimate judicial and quasi-judicial discussions, are unquestionable. …Ohio law expressly assigns some discretionary adjudicative authority to the referees, permits Ohio judges to delegate other adjudicative powers to the referees, and provides that the referees shall proffer advice (often in confidence) to the judges concerning the disposition of cases and other legal controversies.  For these reasons, this court is constrained to rule that Mumford's former position as a referee for the Domestic Relations Court was an inherently political post….

*Id.* at 272.  Since the inherent duties of a probate magistrate are delineated by the same Ohio Rules of Civil Procedure that govern a domestic relations magistrate,[5] *Mumford* compels us to conclude that Birch effectively makes policy for the Probate Court by resolving disputes and recommending dispositions to Judge Donnelly.  Accordingly, we affirm the dismissal of Birch's Title VII claim on the independent ground that she is exempt from the statute's protections as a policymaking employee.

### 2.    Equal Pay Act

The Fair Labor Standards Act, which the Equal Pay Act amended, contains "personal staff" and "policy maker" exemptions that parallel Title VII's exemptions.  The FLSA's protections (and thus the Equal Pay Act's protections) do not extend to an individual:

> (i) who is not subject to the civil service laws of the State, political subdivision, or agency which employs him; and

> (ii) who–

---

[5] *See* OH. REV. CODE ANN. § 2101.32 ("The Rules of Civil Procedure shall govern actions and proceedings in the probate court as provided in Civil Rule 73."); *Mumford,* 105 F.3d at 272 (looking to Civil Rule 73 and related rules to determine inherent duties of domestic relations magistrate).

> (I) holds a public elective office of that State, political subdivision, or agency,
> (II) is selected by the holder of such an office to be a member of his personal staff, [or]
> (III) is appointed by such an officeholder to serve on a policymaking level[.]

29 U.S.C.A. § 203(e)(2)(C). Courts have interpreted the FLSA's "personal staff" and "policymaking" exemptions consistently with their Title VII counterparts. *See Nichols v. Hurley,* 921 F.2d 1101, 1110 (10th Cir. 1990) ("[W]e believe that the nonexhaustive list of factors to be considered in evaluating the 'personal staff' exception [under the FLSA] were well articulated in *Teneyuca v. Bexar County, supra*[.]"); *Brewster v. Barnes,* 788 F.2d 985, 990 n.7 (4th Cir. 1986) ("The definition of 'employee' in Title VII contains a 'personal staff' exemption which is essentially identical to the exemption contained in the Equal Pay Act."); *Marburger v. Upper Hanover Township*, 225 F. Supp. 2d 503, 510-14 (E.D. Pa. 2002) (using *Teneyuca* factors to determine applicability of "policymaking" employee exemption under the Equal Pay Act). Because we have held that Birch is exempt from Title VII's coverage, she similarly is exempt from the Equal Pay Act's coverage. We therefore affirm the dismissal of Birch's Equal Pay Act claim.

## C.     Birch's Sex-Based Wage Discrimination Claim under the Ohio Civil Rights Act

The only remaining basis for Birch to sue for sex discrimination is under Ohio law. Ohio's Minimum Fair Wage Standard Act ("MFWSA") prohibits sex-based wage discrimination. OH. REV. CODE ANN. § 4111.17(A). Because Ohio courts look to judicial interpretations of the federal Equal Pay Act when interpreting the MFWSA,[6] a plaintiff's *prima facie* burden under the MFWSA is "'to prove that the employer 'pays different wages to employees of opposite sexes for equal work on jobs the performance of which require equal skill, effort and responsibility, and which are performed under similar working conditions.'" *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). "Equal" work does not mean identical work. *Id.* (citation omitted). Instead, "only substantial equality of skill, effort, responsibility and working conditions is required." *Id.* (citation omitted).

Defendants argue that, to prove sex discrimination, Birch is required to satisfy this "equal work" standard, namely, she must show that the work she performs as a magistrate in the Release of Assets Department is substantially equal to the work performed by the higher-paid male magistrates in the Front Office Department to whom she compares herself. They further argue that the evidence shows that the work in these two departments is not equal. Judge Donnelly asserts that magistrates in the Release of Assets department "have the least amount of responsibilities among the various departments in the Probate Court," pointing to the fact that the functions performed by these magistrates used to be performed by deputy clerks who were not even licensed attorneys.[7] Whereas the Release of Assets Department handles the summary administration of estates when no fiduciary has been appointed, and most of its cases are uncontested, Front Office magistrates conduct daily hearings on all matters relating to the Probate Court, and the cases they hear have no limit on the monetary damages or requested relief.

---

[6]*See Hollowell v. Society Bank & Trust*, 605 N.E.2d 954, 959 (Ohio Ct. App. 1992) ("As there is little Ohio case law in this area, the court must again look to federal law for guidance."); *Creech v. Ohio Cas. Ins. Co.*, 944 F. Supp. 1347, 1353 (S.D. Ohio 1996) ("Claims under Ohio's version of the Equal Pay Act, O.R.C. § 4111.17, are subject to the same standards as are applied to claims under the federal statute.") (citing *Stone v. Greater Cleveland Regional Transit Auth.*, 635 N.E.2d 1281 (1993)).

[7]Defendants also point to Birch's deposition testimony for the proposition that Birch has admitted that the work she performs is less challenging and demanding than that of the other magistrates. In the cited testimony, however, Birch merely acknowledged that the work she performed "*may* be less challenging" than some of the Guardianship or Front Office work that she was occasionally allowed to do. (J.A. 402) (emphasis added). This testimony is hardly a definitive admission by Birch that her work is not substantially equal to that of the higher-paid male magistrates in the Front Office department.

In response, Birch points to the experience of Magistrate Heidi Koenig, who handled guardianship and appropriation cases before moving to the Front Office. After a year and a half on the job, Koenig testified that the Front Office work was different in that there was a wider span of probate law at issue and she was required to conduct more evidentiary hearings than in her non-Front Office position, but she could not say that her work in the Front Office was more demanding. She further testified that any other magistrate could handle work in the Front Office with the proper training.

If anything, Magistrate Koenig's experience tends to show that the fundamental nature of the Front Office work is different from Release of Assets work because Front Office magistrates generally must spend significantly more time conducting evidentiary hearings and engaging in complex legal analyses. The fact that a non-Front Office magistrate might have to be trained to perform in the Front Office further suggests that Birch was not performing substantially equal work in the Release of Assets Department. Finally, at oral argument, Birch's counsel characterized a magistrate's movement to the Front Office as a "promotion,"[8] a fact that, if true, suggests that Front Office work is not substantially equal to Release of Assets work.

Yet, Birch's arguable failure to satisfy the "equal work" standard is not necessarily fatal to her sex-based wage discrimination claim, because she has not alleged a claim under the MFWSA. Birch's first amended complaint invoked the Ohio Civil Rights Act, OH. REV. CODE ANN. § 4112.99, which provides a civil remedy for sex-based wage discrimination under § 4112.02. Section 4112.02 neither contains, nor incorporates by reference, the MFWSA's "equal work" standard. Thus, the question is to what extent, if at all, the MFWSA's "equal work" standard applies to sex-based wage discrimination claims brought under § 4112.02. The U.S. Supreme Court was confronted with a similar question in *County of Washington v. Gunther,* 452 U.S. 161 (1981), when it was forced to reconcile Title VII, which contains no explicit "equal work" standard, and the Equal Pay Act, which does. Because federal case law applying Title VII is generally applicable to cases involving § 4112 of the Ohio Civil Rights Act,[9] *Gunther* is highly instructive.

Title VII, which prohibits discrimination in compensation because of sex, 42 U.S.C. § 2000e-2(a), contains an employer safe harbor for sex-based wage discrimination that is "authorized" by the Equal Pay Act (the so-called "Bennett Amendment"). 42 U.S.C. § 2000e-2(h). The employer in *Gunther* had argued that "the purpose of the Bennett Amendment was to restrict Title VII sex-based wage discrimination claims to those that could also be brought under the Equal Pay Act, and thus that claims not arising from 'equal work' are precluded." *Gunther,* 452 U.S. at 168. The Court rejected this argument:

> In practical terms, [the petitioners' argument] means that a woman who is discriminatorily underpaid could obtain no relief – no matter how egregious the discrimination might be – unless her employer also employed a man in an equal job in the same establishment, at a higher rate of pay. Thus, if an employer hired a woman for a unique position in the company and then admitted that her salary would have been higher had she been male, the woman would be unable to obtain legal redress under petitioners' interpretation. Similarly, if an employer used a transparently sex-biased system for wage determination, women holding jobs not equal to those held by men would be denied the right to prove that the system is a pretext for discrimination.…Congress surely did not intend the Bennett Amendment to insulate such blatantly discriminatory practices from judicial redress under Title VII.

*Id.* at 178-79. Thus, *Gunther* instructs that a Title VII plaintiff suing for wage discrimination (and, by extension, a plaintiff suing under OH. REV. CODE ANN. § 4112.02) is not required, as part of her *prima facie*

---

[8]Similarly, at deposition, Birch appeared to agree with Defendants' characterization of Koenig's move to the Front Office as a promotion. (J.A. 412.)

[9]*Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131-32 (Ohio 1981).

case, to point to a person of the opposite sex performing equal work for greater pay when there is other highly probative evidence that her salary would have been higher but for her sex.[10]

The dissent contends that the above-quoted language from *Gunther* was intended to be a "very narrow exception to the 'equal work' standard in Title VII sex-based wage discrimination claims" and argues that the exception applies only (1) where an employer admits to sex discrimination (i.e., the plaintiff must present "direct evidence of intentional wage discrimination") or (2) in situations involving transparently sex-biased systems for wage determination. Read in context, however, it is clear that the Supreme Court proffered these two examples of blatant sex discrimination in order to starkly demonstrate the untenability of the argument that a female plaintiff claiming wage discrimination necessarily must point to a man in an equal job in the same employment, who is earning a higher rate of pay. *See Gunther*, 452 U.S. at 181 (finding it "sufficient to note that respondents' claims of discriminatory undercompensation are not barred by [the Bennett Amendment] merely because respondents do not perform work equal to that of male jail guards"). The Court's two *examples* of "egregious" sex discrimination obviously were not intended to convey the sum total of situations in which a Title VII plaintiff can sue for sex discrimination notwithstanding her inability to satisfy the "equal work" standard. Indeed, the Supreme Court expressly refrained from deciding "the precise contours of lawsuits challenging sex discrimination in compensation under Title VII." *Id.*

Even assuming that Birch cannot satisfy the equal work standard, her burden under OH. REV. CODE ANN. § 4112.02, as it would be under Title VII, *see* note 9, *supra*, is to produce some other evidence that shows that Defendants discriminated against her in terms of her salary because of her sex. *See Conti v. Universal Enter., Inc.*, 50 Fed. Appx. 690, 698 (6th Cir. Sep. 20, 2002) ("Pursuant to *Gunther,* plaintiff's failure to produce evidence to show that she was paid less than male employees who performed equal work does not preclude her from establishing her claim of gender-based wage discrimination under Title VII. Plaintiff must, however, produce some other evidence which shows that Enterprises discriminated against her in terms of her salary because of her gender."). That evidence can consist of "either direct evidence of discrimination *or* circumstantial evidence which would support an inference of discrimination." *Id.* at 699 (emphasis added; citing *Kline v. TVA*, 128 F.3d 337, 348 (6th Cir. 1997)).

Contrary to the dissent's position, a Title VII plaintiff (and, therefore, a plaintiff suing under Ohio's Title VII counterpart) is not required to submit direct evidence of intentional discrimination. Courts are not supposed to "depart from the '[c]onventional rul[e] of civil litigation [that] generally appl[ies] in Title VII cases.'" *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99 (2003) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 253 (1989)). "That rule requires a plaintiff to prove his case 'by a preponderance of the evidence,' [*Price Waterhouse*, 490 U.S. at 253,] using 'direct *or* circumstantial evidence,'" *Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983)." *Id.* (emphasis added). "The reason for treating circumstantial and direct evidence alike is both clear and deep-rooted: 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.'" *Id.* at 100 (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)).

Following the lead of Title VII cases, the Court of Appeals of Ohio, interpreting OH. REV. CODE ANN. § 4112.02, has held that the plaintiff has the burden of establishing a *prima facie* case of discrimination "either by direct evidence or circumstantial evidence." *Shepard v. Griffin Servs., Inc.*, No. 19032, 2002 WL 940110, at *3 (Ohio Ct. App. May 10, 2002) (citing *Teamsters v. United States*, 431 U.S. 324, 357-58 (1977)). The court has explained that "[d]irect evidence is 'evidence which, if believed, proves the existence of improper discrimination animus without inference or presumption.'" *Id.* (internal quotation marks and citations omitted). "Evidence either of statements made by non-decision makers or of statements

---

[10] The Ohio Civil Rights Act contains no counterpart to Title VII's Bennett Amendment. Unlike the explicit statutory link between Title VII and the Equal Pay Act, § 4112.02 of the Ohio Civil Rights Act does not refer to the MFWSA at all. Arguably, this fact makes it even clearer that satisfaction of the MWSA's "equal work" standard is not always required in sex-based wage discrimination cases brought under § 4112.02.

made by decision-makers that are not related to the decisional process itself do not satisfy the plaintiff's burden of demonstrating direct evidence of discriminatory animus." *Id.* (citations omitted). "Instead, a plaintiff must show a direct correlation between the evidence of discrimination and the specific employment decision in question." *Id.* (citations omitted).

We hold that Birch has proffered "direct" evidence of intentional discrimination, as the Ohio courts define that concept. During the October, 1998 meeting, when Birch and the other female magistrates confronted Judge Donnelly about their salary concerns, Judge Donnelly allegedly responded that he did not "have to hire women"; that the female magistrates did not have to work at the court if they do not want to; and that he did not know how to make the salaries fair because he "rel[ied] on the men to do the important work of the Court."[11] He also allegedly told Birch that she was fired, a statement he subsequently retracted. Assuming Judge Donnelly made these statements (as the Court must in the summary judgment context), they constitute highly probative evidence of sexual bias by the individual most familiar with and responsible for setting the magistrates' salaries, a bias that he expressed in the context of Birch's complaint about being underpaid. Moreover, there was a direct correlation between Judge Donnelly's sexual animus and his refusal to increase Birch's pay in order to make it fair compared to the salary of males. Indeed, Judge Donnelly's initial response was to cut Birch's pay altogether by firing her, although he subsequently retracted that decision. No inference is required to conclude from the context of Judge Donnelly's comments that he intended to set Birch's pay based, at least in part, on her sex, and that he resented being presented with the equal pay request. His statements were not random "thoughts" on the inferiority of women, but were evidence of a purposeful motivation to maintain Birch's pay at its current level because of her sex.

Summary judgment is unwarranted, even assuming, *arguendo*, that Judge Donnelly's comments are more appropriately classifieds as "circumstantial" evidence of discriminatory intent. According to the dissent, Birch cannot prove discrimination through the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) paradigm utilized for intentional discrimination cases premised solely on circumstantial evidence. We disagree.

It is true that, in typical disparate treatment cases, this Court applies the *McDonnell Douglas* four-part test for a *prima facie* case and has held that the fourth element of the test is satisfied with evidence that a similarly-situated person outside the protected class received more favorable treatment. *E.g.*, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (applying Ohio law).[12] It does not follow, however, that the plaintiff necessarily must submit such comparative evidence in order to establish a *prima facie* case. The Supreme Court has explained that "[t]he facts necessarily will vary in [discrimination] cases, and the specification … of the prima facie proof required … is not necessarily applicable in every respect to different factual situations." *McDonnell Douglas*, 411 U.S. at 802 n.13; *accord Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 n.6 (1981) (noting that the standard for establishing a *prima facie* case "is not

---

[11]As Defendants concede, the district court erroneously held that the evidence of Judge Donnelly's statements were inadmissible hearsay. In fact, Birch's testimony of Judge Donnelly's statements are not hearsay at all, but rather, admissible party admissions. *See* FED. R. EVID. 801(d)(2) (providing that a statement offered against a party that is the party's own statement, in either an individual or a representative capacity, is not hearsay).

[12]The first three *prima facie* elements are generally that (1) the plaintiff belongs to a protected class (*e.g.*, sex); (2) the plaintiff was qualified for the position; and (3) the plaintiff was subjected to an adverse employment action. *E.g.*, *McDonnell Douglas*, 411 U.S. at 802; *Mitchell*, 964 F.2d at 582. The fourth element in a failure to hire case, as in *McDonnell Douglas*, requires the plaintiff to show that he was rejected for the position and that the employer continued to seek applications from persons with the plaintiff's qualifications and/or that a person outside of the plaintiff's protected class was hired. *McDonnell Douglas*, 411 U.S. at 802; *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996). An alternative manner of satisfying the fourth element in a disparate treatment case is through evidence that, for the same or similar conduct, the plaintiff was treated differently than a similarly-situated employee outside of the plaintiff's protected class. *Mitchell*, 964 F.2d at 582 (holding that a plaintiff suing for discriminatory discharge can prove the fourth element of her *prima facie* case by showing either that she was replaced by someone outside of the protected class or that "a comparable non-protected person was treated better").

inflexible") (citing *McDonnell Douglas*, 411 U.S. at 802 n.13); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (noting that the *McDonnell Douglas* method for providing disparate treatment "was never intended to be rigid, mechanized, or ritualistic"); *Brown v. Packaging Corp. of Am.*, 338 F.3d 586, 590 n.1 (6th Cir. 2003) ("It is worth noting that the Supreme Court [in *McDonnell Douglas*] did not intend its discussion [of the *prima facie* case] to limit the ways in which a plaintiff could establish a prima facie case."). Thus, for example, there may be cases where there is so much evidence of a decision-maker's discriminatory animus that a plaintiff's failure to satisfy the fourth element of the *McDonnell Douglas prima facie* case is not fatal to her claim. *Cf. id.* (hypothesizing that, even if the plaintiff could not demonstrate the fourth *prima facie* element of his failure to promote claim, he might well have been able to make out a case of disparate treatment for the jury "had there been a wealth of circumstantial evidence of discriminatory animus").

The Supreme Court made this very point in *Gunther* when it held that there may be viable cases of sex-based wage discrimination even where the plaintiff cannot point to a similarly-situated employee of the opposite sex who is earning more. *Gunther*, 452 U.S. at 178-79. Yet, requiring such a plaintiff, as part of her *prima facie* case, to produce evidence that comparably situated employees of the opposite sex were treated more favorably (i.e. received unequal pay for equal work) would directly conflict with the Court's holding. Therefore, this type of comparative evidence cannot, as a matter of logic, be a necessary part of the plaintiff's *prima facie* burden.

According to the Supreme Court, the purpose of the *prima facie* burden is to "eliminate[] the most common nondiscriminatory reasons" for the adverse action and raise an inference that the adverse action was motivated by discriminatory animus. *Burdine*, 450 U.S. at 253-54 (citations omitted); *see also Price Waterhouse*, 490 U.S. at 270 (O'Connor, J., concurring) ("The prima facie case established [in *McDonnell Douglas*] was not difficult to prove, and was based only on the statistical probability that when a number of potential causes for an employment decision are eliminated an inference arises that an illegitimate factor was in fact the motivation behind the decision."); *Furnco*, 438 U.S. at 577 ("A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."). The evidence that Birch has proffered fulfills these functions. Judge Donnelly's sexually biased comments, expressed in the context of Birch's complaint about what she believed to be discriminatorily low pay, tend to eliminate the most common nondiscriminatory reasons for her rate of pay (*e.g.*, job duties, years of service, poor performance). Accordingly, such powerful evidence of discriminatory animus, whether characterized as direct or circumstantial, is sufficient to satisfy Birch's "not onerous" *prima facie* burden. *Burdine*, 450 U.S. at 253.

Because we hold that Birch has met her *prima facie* burden of demonstrating sex-based wage discrimination, the remaining question under the *McDonnell Douglas* paradigm is whether she has created a genuine issue of material fact as to whether Defendants' non-discriminatory justifications for her rate of pay are a pretext for sex discrimination. According to the Supreme Court, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000). As discussed below, Birch has submitted evidence suggesting that several of Defendants' explanations are false.

Defendants proffered several reasons for Birch's lower salary compared to the higher-paid male magistrates, including Birch's relatively fewer years of service with the Probate Court and her allegedly deficient performance. But the record suggests that Defendants do not exclusively or consistently rely on years of service to set salaries. Three female magistrates (Ann Wenneman, Heidi Koenig, and Rosanne Hillow) earn less than a male magistrate (Richard Gedeon) even though he has less court tenure than they. In addition, two of those magistrates (Wenneman and Hillow) earn the same salary as a male magistrate (Alan Shankman), even though the female magistrates have greater court tenure. Thus, a factfinder

reasonably could reject Defendants' assertion that Birch's lower pay is explainable by her relatively fewer years with the court.

Defendants' assertion that Birch's lower salary is explainable by her allegedly deficient performance also raises a significant credibility issue. Defendants' sole support for this argument is Judge Donnelly's declaration, which states, "In reviewing the daily work of all the Magistrates, I observed that the error rate of Plaintiff Wanda Birch was greater than the other Magistrates. As a result, I have less confidence in Plaintiff's work, her abilities and her judgment." Defendants have provided absolutely no explanation of what is meant by Birch's alleged "error rate." More importantly, Judge Donnelly never explained how Birch's alleged error rate was connected to her lower rate of pay. Indeed, the following evidence suggests that there is no such connection: (1) at no time during the four years prior to the date Birch first confronted Judge Donnelly about her salary concerns had Defendants told her they had been dissatisfied with her job performance; (2) Birch has received regular salary increases; (3) there are no performance guidelines, job descriptions, or formal evaluations to substantiate Birch's alleged poor performance; (4) there are no notes or comments about Birch's performance in her personnel file; and (5) there is no written record of the actual work performed by each magistrate upon which the level of each magistrate's compensation could be based. From these facts, a reasonable jury could disbelieve Judge Donnelly's statement about Birch's poor performance and its purported connection to her rate of pay.

In sum, the record contains sufficient evidence to create a genuine issue of material fact as to whether Birch's salary was set lower than it would have been had she been a man. The most significant evidence in this regard are Judge Donnelly's alleged biased statements indicating that Birch's sex was a consideration when he set and/or refused to increase her salary. In addition, several of Defendants' facially non-discriminatory justifications for Birch's lower salary are in material dispute, permitting the inference that they are a pretext for a discriminatory motive. For these reasons, we reverse the district court's dismissal of Birch's sex-based wage discrimination claim under the Ohio Civil Rights Act.

## D.     Birch's Retaliation Claims

Birch's first amended complaint alleged retaliation claims against Defendants pursuant to OH. REV. CODE ANN. § 4112 and 42 U.S.C. § 1983. She alleged that, in retaliation for her complaints to Judge Donnelly about what she perceived to be sex discrimination, her employment was terminated, she was "threaten[ed]," and her work was scrutinized more closely.

Defendants argue that Birch cannot bring a retaliation claim under § 1983,[13] because that claim is premised on the allegation that Defendants retaliated against her for exercising a right created by Title VII (the right to oppose unlawful activity), not the Constitution. *See Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984) ("[W]e believe Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII."). But arguably the First Amendment to the Constitution independently protects a government employee from retaliation for complaints about discriminatory employment practices, which are a matter of public concern. *See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 284 (1977) (government employee speech that touches on a matter of public concern is constitutionally protected, but must be balanced against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)); *Strouss v. Mich. Dept. of Corrections*, 250 F.3d 336, 346 (6th Cir. 2001) (noting in dicta that a First Amendment retaliation claim based on complaints about sexual harassment, which is a specific form of sex discrimination, would be viable because such complaints are a matter of public concern); *Perry v. McGinnis*, 209 F.3d 597, 604 (6th Cir. 2000) (holding that a complaint of race discrimination made to an employer in the context of an internal grievance constituted

---

[13]42 U.S.C. § 1983 imposes liability on any "person" who, under color of law, deprives another person of any rights, privileges or immunities secured by the Constitution and federal law.

a matter of public concern meriting First Amendment protection). Moreover, the rationale of *Day* – preventing state government employees from bypassing Title VII's administrative processes and going directly to court – simply do not apply to a plaintiff like Birch, who is exempt from Title VII's protections. Thus, we decline to dismiss Birch's § 1983 retaliation claim pursuant to *Day*.

Ultimately, Birch's retaliation claims, whether brought under § 1983, Title VII or the Ohio Civil Rights Act, fail as a matter of law because she cannot establish a *prima facie* case. An essential element of a retaliation claim is that the plaintiff suffered an adverse employment action that is tantamount to a "materially adverse change in the terms of her employment." *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir. 1996) (citation omitted); *see also id.* at 886 (holding that a "mere inconvenience" or a "bruised ego" is not enough to constitute an adverse employment action). Although Birch argues that she was terminated during the October, 1998 meeting with Judge Donnelly after she complained about unequal pay, the record shows that Judge Donnelly rescinded the termination in his next breath and that Birch continues to be employed as a magistrate with the Probate Court. Under these circumstances, the "termination" was not tantamount to any kind of change in Birch's employment status. The only other retaliatory conduct to which Birch points with any specificity is increased scrutiny of her work, but such actions also are not tantamount to adverse employment actions. *See Allen v. Mich. Dep't of Corrections*, 165 F.3d 405, 410 (6th Cir. 1999) (holding that supervisors' alleged action of monitoring the plaintiff more closely than they monitored non-African American employees did not constitute "adverse employment actions" actionable under Title VII).[14] For these reasons, the district court properly granted summary judgment for Defendants on Birch's retaliation claims.

## III.

For all the foregoing reasons, we **AFFIRM** the dismissal of Birch's Title VII and Equal Pay Act claims, as well as her claims for race discrimination, age discrimination, and intentional infliction of emotional distress. However, we **REVERSE** the district court's dismissal of her sex-based wage discrimination claim under the Ohio Civil Rights Act.

---

[14] At oral argument, Birch's counsel intimated that Birch suffered an adverse action in the form of being denied a promotion to the Front Office. Birch's appellate brief, however, fails to mention the alleged promotion denial as an example of retaliatory conduct. Birch also failed to separately appeal the district court's dismissal of her failure-to-promote claim. Accordingly, she has waived the issue of the alleged promotion denial for purposes of this appeal.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

JULIA SMITH GIBBONS, Circuit Judge, concurring in part and dissenting in part. I agree with the majority that Birch cannot recover on her claim of sex-based wage discrimination under either Title VII or the Equal Pay Act. I also agree that Birch cannot establish a claim of retaliation under § 1983, Title VII, or the Ohio Civil Rights Act. However, because I cannot agree with the majority's conclusion that Birch can establish a sex-based discrimination claim under the Ohio Civil Rights Act, Oh. Rev. Code Ann. §§ 4112.02, 4112.99, I respectfully dissent.

**I.**

The majority concludes that Birch raises a genuine issue of material fact on her sex-based wage discrimination claim under the Ohio Civil Rights Act, notwithstanding the fact that she has been unable to satisfy the "equal work" standard, as required for claims brought under the Equal Pay Act. To meet this standard, an employee must prove that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974); *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981). Though the majority concedes that Birch's failure to meet the "equal work" standard bars Birch's recovery under Ohio's Minimum Fair Wage Standard Act, Oh. Rev. Code Ann. § 4111.17(A), because Ohio courts rely on interpretations of the Equal Pay Act in construing their own law, *Stone v. Greater Cleveland Reg'l Transit Auth.*, 635 N.E.2d 1281, 1285 (Ohio 1993), the majority finds that Birch may be able to succeed on her wage discrimination claim under § 4112.02 without satisfying the "equal work" standard. The majority reaches this conclusion by relying on the Supreme Court's reasoning in *County of Washington v. Gunther*, 452 U.S. 161 (1981), in which the court held that a plaintiff bringing suit under Title VII for sex-based wage discrimination may not be required to meet the "equal work" standard set forth under the Equal Pay Act.

I cannot agree with the majority's conclusion. *Gunther* was intended to be a very narrow exception to the "equal work" standard in Title VII sex-based wage discrimination claims. Indeed, the Supreme Court explicitly declined to "decide . . . the precise contours of lawsuits challenging sex discrimination in compensation under Title VII." *Id.* at 181. The opinion, instead of finding the "equal work" standard of the Equal Pay Act wholly inapplicable to Title VII cases, as the majority would hold, carves out exceptions from the "equal work" requirement in a few isolated situations, such as instances where an individual holds a unique job and the employer has expressly admitted that the individual would be paid more but for the individual's sex and situations involving "transparently sex-biased system[s] for wage determination." *Id.* at 179.

Federal courts hearing cases involving sex-based wage discrimination claims have read *Gunther* narrowly, rather than expansively, as the majority does today. *See Clark v. Johnson & Higgins*, 1999 WL 357804, at *3 (6th Cir. May 28, 1999) (finding the *Gunther* rationale inapplicable in a case where the employer made no admission that the employee would have been paid more had she been male and where no "transparently sex-biased system for wage determination" existed, and holding that a claims of wage discrimination under Title VII and the Equal Pay Act are subject to standards which are substantially similar such that the outcome of both claims should be identical); *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1133 (5th Cir. 1983) (stating that *Gunther*'s rationale is limited to cases of "transparently sex-biased system[s] for wage determination" and cases involving direct evidence that the employer paid the employee less because of his or her sex); *EEOC v. Sears, Roebuck & Co.*, 628 F. Supp. 1264, 1333 (N.D. Ill. 1986) (noting that the *Gunther* analysis is only appropriate in instances of intentional discrimination that is direct, or violations that are blatant, and noting that federal courts have refused to apply *Gunther* analysis where the claim involves a subjective assessment of different positions with different duties).

Birch's claim does not fit within the narrow confines of the *Gunther* exception, as Birch fails to present direct evidence of the type addressed in *Gunther*, that is, there is no admission on the part of any defendant that she would have been paid more for the same work if she were a man. Nor has she identified to the court a "transparently sex-biased system for wage determination"; the divergence in quality of work and level of responsibility between the magistrates in the higher-paid positions in the Front Office Department and the lower-paid positions in the Release of Assets Department makes it impossible to attribute the pay differential to gender. Therefore, because Birch's claim does not fall within the circumscribed bounds of *Gunther*, I would find that the "equal work" standard of the Equal Pay Act, rather than the more general Title VII analysis, governs Birch's § 4112.02 claim.

The majority chooses not only to read the *Gunther* case as broadly exempting sex-based wage discrimination claims from satisfying the "equal work" standard, but extends that exemption to Ohio state law.[1] Such an expansion of *Gunther* is unjustified by case law interpreting § 4112.02 of the Ohio Civil Rights Act. Recent cases have required a plaintiff claiming sex-based wage discrimination, brought under *either* § 4112.02 or § 4111.17, to satisfy the "equal work" standard set forth in the Equal Pay Act. *See, e.g., Brune v. BASF Corp.*, No. 99-3194, 2000 WL 1597908, at *2 (6th Cir. Oct. 17, 2000) ("[T]he EPA analysis applies to [the] claim of wage discrimination under Ohio Rev. Code § 4112.02(A)."); *Clark*, No. 97-4233, 1999 WL 357804, at *3 (finding that the only difference between a claim under the Equal Pay Act and § 4112.02 of Ohio law was the statute of limitations); *Follas v. Bagley*, No. 3:99CV7746, 2000 WL 251658, at *2-3 (N.D. Ohio Feb. 10, 2000) ("Analysis for claims of wage discrimination–or unequal pay for equal work–is essentially the same whether claimed under . . . Title VII, the Equal Pay Act, or [§ 4112.02]," and discussing the "equal work" requirement); *Kroh v. Cont'l Gen. Tire, Inc.*, No. 19412, 1999 WL 1215167, at *2 (Ohio App. Dec. 15, 1999) ("[C]laims alleging unequal pay, pursuant to either R.C. 4111.17 or R.C. 4112.02, are subject to the analysis employed under the Federal Equal Pay Act"); *Gliner v. Saint-Gobain/Norton Indus. Ceramics Corp.*, No. 74055, 1999 WL 380434, at *35 (Ohio App. June 10, 1999) ("It has been determined that claims brought pursuant to [§] 4112, *et seq.* and [§] 4111.17 are subject to the same standards as are applied to claims brought under its Federal Equal Pay Act counterpart.") (citations omitted), *rev'd on other grounds*, 732 N.E.2d 389 (Ohio 2000). Though the majority finds that Birch's § 4111.17 claim fails due to Birch's inability to satisfy the "equal work" standard, the majority chooses to nullify this requirement with respect to § 4112.02. Such a departure from past interpretations of the Ohio law should not, in my opinion, originate in federal court. *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (noting that federal courts should be cautious when making determinations of state law); *Shah v. Upjohn Co.*, Nos. 95-2337, 96-1079, 1997 WL 90305, at *4 (6th Cir. Feb. 28, 1997) ("[A] federal court should manifest great caution in blazing new state-law trails.") (internal citation, quotation marks, and alterations omitted).

Thus, I would hold that Birch's claim under § 4112.02, like her claim under § 4111.17, must fail, due to Birch's inability to satisfy the "equal work" standard. The majority opinion satisfactorily discusses the reasons that Birch cannot satisfy this standard; it only errs in failing to apply this standard to § 4112.02 as well as § 4111.17.

---

[1]It is notable that neither the parties nor the district court distinguished between Birch's federal- and state-based wage discrimination claims. Both the parties' briefs as well as the district court opinion assumed that the claims were substantially identical, such that if the federal discrimination claims failed, so too did the state discrimination claims. It was not until this court's majority opinion that a distinction was drawn between the fates of the federal and state discrimination claims.

## II.

Even assuming *arguendo* that the "equal work" standard does not apply to Birch's claim, so that Title VII analysis, rather than Equal Pay Act analysis, governs Birch's wage discrimination claim under § 4112.02,[2] Birch nonetheless fails to present evidence creating a genuine issue of fact on her claim of sex-based wage discrimination. Under Title VII analysis, a plaintiff can establish a discrimination claim through either direct or circumstantial evidence.[3] Birch fails to raise a genuine issue of material fact employing either kind of evidence.

In order to establish a case of sex discrimination under Title VII analysis, a plaintiff must prove discriminatory intent. *Mauzy v. Kelly Servs., Inc.*, 664 N.E.2d 1272, 1277 (Ohio 1996). The plaintiff may satisfy this burden by producing either direct or circumstantial evidence of sex discrimination. *See McGowan v. Cuyahoga Metro. Hous. Auth.*, No. 84041, 2004 WL 1752867, at *1 (Ohio App. Aug. 5, 2004). In a direct evidence case, the plaintiff must present "direct testimony that the employer acted with a discriminatory motive." *Vincenti v. Hilliard-Lyons, Inc.*, No. 91-5374, 1991 WL 256708, at *2 (6th Cir. Dec. 5, 1991) (citing *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir. 1985)). While it is necessary to produce evidence which supports a finding of discriminatory intent, such proof alone is insufficient. *Mauzy*, 664 N.E.2d at 1280. Rather, "[t]he critical inquiry . . . is whether gender was a factor in the employment decision *at the moment it was made.*" *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1989). As such, the plaintiff attempting to establish a claim of sex discrimination using direct evidence must also point to an action or omission made with respect to the plaintiff's employment and connect the action to the discriminatory intent. *See id.* at 262 (O'Connor, J., concurring) (noting that Title VII was not intended to be a "thought control bill," and that it is necessary to have the requisite discriminatory intent coupled with an adverse employment action in order to establish a prima facie case). Thus, the plaintiff bears the burden of not only showing that the employer had discriminatory thoughts, but also that the adverse employment action that she complains of was a product of that discriminatory thought. *Mauzy*, 664 N.E.2d at 1280.

Birch produces three statements made by Donnelly during the context of a discussion about the existing salary discrepancies between men and women at the office as direct evidence of discrimination: (1) Donnelly's assertion that he "did not have to hire women," as there was no law which mandated that he do so; (2) Donnelly's statement that the female magistrates were not obligated to work at the court if they did not want to; and (3) Donnelly's statement that he would not know how to make the salaries fair, as he relied on men to do the important work of the court. Certainly, these statements display troubling discriminatory animus toward the female magistrates on Donnelly's part. However, as noted above, evidence of discriminatory thought or intent alone is not enough. Birch is required, additionally, to present evidence permitting an inference that the adverse employment action she complains of–namely, the pay differential between her salary and the salaries of her male co-workers–was taken because of Donnelly's discriminatory thoughts toward her because of her sex. Thus, while Donnelly's statements provide direct evidence of generalized discriminatory animus, they do not provide direct evidence to support Birch's specific claim.

---

[2] *See Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981) ("[W]e have determined that federal case law interpreting Title VII of the Civil Rights Act of 1964 is generally applicable to cases involving alleged violations of R.C. Chapter 4112.") (internal citations omitted).

[3] The majority opinion inaccurately describes the dissent as requiring a plaintiff in a Title VII case to present direct evidence of intentional discrimination. Such a characterization misses the point. As noted previously, one exception to the "equal work" analysis for wage-based claims permitted by *Gunther* is the situation in which there is an admission of discriminatory intent in setting pay, an admission which constitutes direct evidence. But if the majority is correct in its conclusion that *Gunther* permits conventional Title VII rather than "equal work" analysis in a broad range of cases, then traditional Title VII analysis, permitting either direct or circumstantial evidence, applies.

Birch cannot meet this burden, and thus her claim of direct discrimination fails. It is true, as the majority notes, that the statements listed above were made in the context of a discussion between Donnelly and four female magistrates, including Birch, regarding the women's salary concerns. However, the record reveals no evidence permitting a finding of a connection between Donnelly's discriminatory views and the setting of Birch's salary. Therefore, while the statements can be used as circumstantial evidence of discrimination against Birch, they fail to permit an inference of discrimination based on direct evidence. *See Anderson v. Twitchell-A Tyco Int'l Ltd.*, 76 F. Supp. 2d 1279, 1285 (M.D. Ala. 1999).

In the absence of direct evidence of sex discrimination, the plaintiff may also establish her claim by producing circumstantial evidence of discrimination. Title VII requires that a plaintiff meet the familiar *McDonnell-Douglas* test when establishing a claim of discrimination using circumstantial evidence. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582(6th Cir. 1992) (Title VII sex discrimination case applying the four-part test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To satisfy the four-part test for a prima facie case of discrimination, the plaintiff must show that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) a similarly situated person outside the protected class received more favorable treatment. *Id.* Birch is clearly a member of a protected class, and has identified an adverse employment action in the form of the difference between her salary and that of her male co-workers. However, Birch is unable to identify a male co-worker who is similarly situated. Therefore, Birch is unable to meet her prima facie burden.

Birch is required, to meet her prima facie burden, to identify a non-protected employee who was similarly situated, or directly comparable, in all material respects. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *McGowan*, 2004 WL 1752867, at *2. The most important factors to be considered may vary from case to case, but in order to meet this burden, Birch was required to identify someone who has dealt with the same supervisor, has been subject to the same standards, and has engaged in the same conduct without differentiating or mitigating circumstances which would justify a distinction between either the workers' conduct or the supervisor's treatment of the workers. *See Jones v. Swagelok Co.*, No. 83849, 2004 WL 1631162, at *4 (Ohio App. July 22, 2004). Birch has attempted to satisfy this standard by pointing to the male workers in the Front Office Department who are more highly compensated. However, these male employees perform substantially different, more demanding functions and possess greater responsibility. Therefore, I cannot agree that these employees are similarly situated. In fact, the reasons laid out in the majority opinion for finding that Birch failed to satisfy the "equal work" standard also provide support for the notion that Birch is not similarly situated to the male Front Office Magistrates with whom Birch compares herself. *See Conti v. Univ. Enter., Inc.*, 50 Fed. Appx. 690, 699 (6th Cir. 2002) (finding that the relevant factors to consider in determining whether a Title VII plaintiff has satisfied her burden of identifying a similarly situated employee in a wage discrimination case include those factors considered in determining whether an employee has satisfied the "equal work" standard under the Equal Pay Act). As a result, Birch fails to present evidence to establish a prima facie claim of sex discrimination based on circumstantial evidence, as she cannot satisfy all four elements of the *McDonnell-Douglas* test.

The majority correctly notes that there may conceivably be situations in which a plaintiff cannot establish a prima facie case under conventional *McDonnell-Douglas* analysis, yet may still withstand summary judgment in a circumstantial evidence case. This, however, is not such a case. Here, the plaintiff has made no effort whatever to compare herself to any other individual employee. Her evidence of Donnelly's statements permits only an inference that Donnelly harbored discriminatory attitudes about women employees in general, not an inference that the setting of Birch's salary was motivated by sex-based discrimination. A claim of sex-based discrimination cannot succeed based on such diffuse evidence of discriminatory animus, where the record contains no evidence connecting the discriminatory attitude to any employment decision involving the plaintiff. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (holding that the trait protected under Title VII "must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.") (internal quotation marks and citation omitted).

For the all of the reasons stated above, I cannot conclude that Birch has raised a genuine issue of material fact on her sex-based wage discrimination claim under the Ohio Civil Rights Act and therefore would find that the district court properly granted summary judgment in favor of the defendants.