PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2216
_____


SCOTT P. CLEWS; JOSEPH S. POTHERING;
DEBRA M. DETWEILER,

                                        Appellants
                    v.

COUNTY OF SCHUYLKILL
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-17-cv-02233)
District Judge: Honorable Jennifer P. Wilson
_____


Argued on March 10, 2021

Before: SMITH, Chief Judge, McKEE and AMBRO, Circuit
Judges

(Opinion filed August 30, 2021)

Edward M. Brennan (Argued)
306 Mahantongo Street
Pottsville, PA 17901

        Counsel for Appellants

Christopher L. Scott (Argued)
David L. Schwalm
Thomas Thomas & Hafer LLP
225 Grandview Ave, 5th Floor
Camp Hill, PA 17101

        Counsel for Appellee

_____

## OPINION OF THE COURT
_____

AMBRO, <u>Circuit Judge</u>

Employees of state and local governments are typically protected by federal employment laws such as the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. But not so for the personal staff of elected officials. Determining who is a member of an official's personal staff can be a fact-intensive and often murky inquiry. In this case of first impression for our Circuit, we distill two themes for analyzing the personal staff exception that flow from the FLSA, its regulations, and precedents in other circuits, particularly the Fifth Circuit's approach in *Teneyuca v. Bexar County*, 767 F.2d 148, 151 (5th Cir. 1985).

Three former Deputy Coroners claim their employer, the County of Schuylkill, violated the FLSA by failing to pay them overtime and then firing them in retaliation for seeking overtime pay. The District Court granted summary judgment in favor of the County, concluding that all three Plaintiffs were personal staff of the County's elected Coroner and thus cannot bring an FLSA claim. While we agree with the Court that the County did not forfeit the personal-staff-exception argument, granting summary judgment was not called for, as there are still material factual disputes concerning the exception's applicability to the Plaintiffs. Hence we vacate its decision and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In Pennsylvania, each county has an independently elected coroner. *See* 16 Pa. Stat. and Cons. Stat. Ann. § 401(a)(4) (West 2021). Since January 2012, Dr. David Moylan has been the elected Coroner in Schuylkill County. In that role, his main responsibility includes investigating the cause and manner of deaths in the County, especially those involving suspicious circumstances or criminal acts. *See id.* § 1218-B. In addition to Dr. Moylan, the Coroner's office consists of Dr. Joseph A. Weber, the Chief Deputy Coroner, as well as many Deputy Coroners.

All three Plaintiffs—Scott P. Clews, Joseph S. Pothering, and Debra M. Detweiler—worked as part-time Deputy Coroners for the County. It also concurrently employed each in another capacity. Clews was a Deputy Coroner between 2008 and 2016 while working full time as a 911 operator. Pothering worked as a Deputy Coroner for 11 years between 2008 and 2019 and was also a 911 operator

3

before retiring in 2018.  Detweiler became a Deputy Coroner in 2014 and concurrently served as a certified field appraiser in the tax assessor's office.  A former Coroner, Joseph Lipsett, hired Clews and Pothering, while Dr. Moylan hired Detweiler.

For most counties, including Schuylkill, the relevant Pennsylvania statute acknowledges only one "deputy" coroner who may be appointed by the Coroner to act in his place.  *See* 16 Pa. Stat. and Cons. Stat. Ann. § 1211-B (West 2021).[1] Despite this statutory constraint, for historical reasons many people (possibly around twenty at the time of Detweiler's hiring) hold the title of Deputy Coroner in Schuylkill County, though they are also referred to as "investigators."  Suppl. App. at 12; Oral Arg. Tr. 9:9–14.  As Deputy Coroners, the Plaintiffs were dispatched by the Coroner or Chief Deputy Coroner to a scene of death to investigate and determine its cause.  Typically their work involved examining bodies, taking photographs, conducting interviews, attending autopsies, and transporting bodies to and from funeral homes.  When on site, they wore professional-looking attire and carried identification badges.  After completing an investigation, they called either the Coroner or the Chief Deputy Coroner to report their findings.

The County paid Deputy Coroners a flat rate, which meant the Plaintiffs did not receive overtime pay even if they

[1] Pennsylvania has sixty-seven named counties divided into nine classes based on population.  16 Pa. Stat. and Cons. Stat. Ann. §§ 201, 210 (West 2021).  Schuylkill County, which had a population of about 148,000 as of the 2010 census, is a Fourth Class county.  *Id.* §§ 210, 211.  Pennsylvania has separate rules about coroners for more populated First Class, Second Class and Second Class A counties.  *See id.* §§ 4231, 7534.

4

worked more than forty hours per week across all their positions for the County. The County's then-Human Resources Director, Martina Chwastiak, believed this payment structure violated the FLSA and expressed concerns to her supervisors on several occasions. Chwastiak also informed Dr. Moylan about the overtime-pay requirements, which would affect those who worked other jobs with the County (such as the three Plaintiffs).

In 2016, Dr. Moylan approved the termination of two of the Plaintiffs, Clews and Pothering, ostensibly so the County would not need to pay them overtime. *See* Suppl. App. at 20 (Dr. Moylan stating he "approved the terminations . . . because of that 40-hour rule"). Based on Chwastiak's request, the County's Board of Commissioners also voted to approve those terminations (which included a third Deputy Coroner, Kyle Koury, who is not a party to this lawsuit). For reasons unclear from the record, only Clews was immediately separated from the Coroner's office. Pothering separated temporarily in 2017 but did not completely stop working as a Deputy Coroner until May 2019. The record is also unclear on when and why Detweiler was terminated or if she ever stopped working at the Coroner's office.[2] *See Clews v. Cnty. of Schuylkill*, 461 F. Supp. 3d 142, 146 (M.D. Pa. 2020); Oral Arg. Tr. 23:22–24:5.

In November 2017, the Plaintiffs filed an action in the Court of Common Pleas of Schuylkill County, which the County then removed to federal District Court. The complaint sought damages for alleged violations of the FLSA's overtime

---

[2] Detweiler ran, unsuccessfully, to replace Dr. Moylan as the Coroner. Pothering claims he was terminated because he supported Detweiler over Moylan during the election.

5

wage and retaliatory-discharge provisions. In its answer to the complaint, the County stated that the "[P]laintiffs are not entitled to any recovery . . . because they were, and are, exempt from the minimum wage and/or overtime requirements of the FLSA." App. at 34. Following discovery, the parties filed cross-motions for summary judgment. The County then argued specifically that the Plaintiffs were not covered by the FLSA due to the personal staff exception. The Plaintiffs responded that the County forfeited this affirmative defense by failing to raise it in answering the complaint, but the District Court rejected this argument. On the merits of the personal staff exception, the Court sided with the County, holding that the Plaintiffs were members of Dr. Moylan's personal staff and therefore not covered by the FLSA. The Court thus granted summary judgment in favor of the County on all claims without reaching the substance of the alleged FLSA violations. The Plaintiffs timely appealed to us.

## II. JURISDICTION AND STANDARDS OF REVIEW

The District Court had federal question jurisdiction under 28 U.S.C. § 1331 over this FLSA case, and we have appellate jurisdiction per 28 U.S.C. § 1291. We review the District Court's decision regarding "the waiver of an affirmative defense for abuse of discretion." *Sharp v. Johnson*, 669 F.3d 144, 158 (3d Cir. 2012). As to the District Court's grant of summary judgment, we exercise plenary (that is, unrestricted) review. *See Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 751 (3d Cir. 2019). "Summary judgment is appropriate only where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* at 751–52 (quoting Fed. R. Civ. P. 56(a)). "A dispute is 'genuine' if 'a reasonable jury could return a verdict

6

for the nonmoving party.'" *Id.* at 752 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Like the District Court, our role is not to weigh the evidence and assess its veracity, but instead we review the facts in the light most favorable to the nonmoving party. *Id.*

## III. DISCUSSION

The Plaintiffs press two arguments on appeal. First, they contend that the County forfeited the personal-staff-exception argument. Second, even if the defense was not forfeited, they argue that the District Court erred by granting summary judgment in favor of the County given there are genuine disputes of material fact with respect to applying the personal staff exception. We address each issue in turn.

### A. Forfeiture of the Personal-Staff-Exception Defense

Typically, an "affirmative defense . . . must be included in a responsive pleading or may be considered [forfeited]." *Sharp*, 669 F.3d at 158; *see also* Fed. R. Civ. P. 8(c)(1). While we have not directly addressed whether an exception to the definition of "employees" under federal employment laws is an affirmative defense, the Supreme Court noted that "the general rule [is] that the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof." *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974); *see also Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 632 (7th Cir. 2010); *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 467 (5th Cir. 2001).

7

The parties here accept that the personal staff exception to the FLSA is an affirmative defense. Under our precedents, "affirmative defenses may be raised at any time, even after trial, so long as the plaintiff suffers no prejudice." *Sharp*, 669 F.3d at 158. To establish prejudice, the Plaintiffs must show the County's failure to raise the specific defense "deprived [them] of an opportunity to rebut that defense or to alter [their] litigation strategy accordingly." *In re Sterten*, 546 F.3d 278, 285 (3d Cir. 2008).

We agree with the District Court that the Plaintiffs were not prejudiced by the County's failure to mention specifically the personal staff exception in its answer to the complaint. It is telling that, while the Plaintiffs contend that they were "greatly prejudiced," Pls.' Br. at 10, they did not explain what could have been developed in discovery with more explicit notice of the exception. Nor was there a request to reopen discovery once the County briefed the exception's applicability. Indeed, the County took a consistent position throughout that the Plaintiffs were not covered by the FLSA. In addition to stating in its answer that the Plaintiffs "were, and are, exempt from the . . . requirements of the FLSA," the County questioned each Plaintiff about his or her job responsibilities during discovery. App. at 34; *see Clews*, 461 F. Supp. 3d at 149. All this "should have put [the Plaintiffs] on notice" that the personal staff exception was at issue. *See Schmidt*, 599 F.3d at 632. We thus conclude that, despite not using the words "personal staff" in the answer, the County properly preserved this defense.

### B.    Personal Staff Exception

#### 1.    *Legal background*

Among other protections, "[t]he FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). "Congress enacted [the statute] in 1938 with the goal of 'protect[ing] all covered workers from substandard wages and oppressive working hours.'" *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)) (second alteration in original). For instance, the overtime-pay requirement "obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1½ times the employees' regular wages." *Id.* (citing 29 U.S.C. § 207(a)).

But the FLSA's protections do not extend to everyone. Only those who are "employees" can assert valid FLSA claims. *See Razak v. Uber Techs., Inc.*, 951 F.3d 137, 142 (3d Cir. 2020) (citing 29 U.S.C. §§ 203, 206–207); *see also* 29 U.S.C. § 215(a)(3). As relevant here, the FLSA excludes from its definition of covered "employees" those who work for a state, its political subdivision or an intergovernmental agency, are not subject to civil service laws (that is, are not civil servants under the relevant state laws), *and* fall within one of several enumerated categories, including those "selected by the holder of [a public elective office] to be a member of his personal staff." 29 U.S.C. § 203(e)(2)(C)(ii)(II).[3] This is known as the

---

[3] The other excluded categories are (1) elected officials, *see* 29 U.S.C. § 203(e)(2)(C)(ii)(I), (2) individuals appointed to a

9

personal staff exception.[4]    While a plaintiff seeking compensation under the FLSA has the "initial burden of proving that an employer-employee relationship exists . . . [, o]nce this burden is met, the employer bears the burden of proving entitlement to any exemptions or exceptions." *Benshoff v. City of Va. Beach*, 180 F.3d 136, 140 (4th Cir. 1999); *see also Brennan*, 417 U.S. at 196–97; *Oden*, 246 F.3d at 467.

Analogous carveouts for personal staff are found in other federal employment statutes, including Title VII of the Civil Rights Act, *see* 42 U.S.C. § 2000e(f), and the Age Discrimination in Employment Act, *see* 29 U.S.C. § 630(f). The Equal Pay Act and the Family and Medical Leave Act also incorporate the FLSA's exception for personal staff. *See Birch v. Cuyahoga Cnty. Prob. Ct.*, 392 F.3d 151, 161 (6th Cir. 2004)

---

policymaking position by an elected official, *see id.* § 203(e)(2)(C)(ii)(III), (3) immediate advisors who counsel the elected official on the office's constitutional or legal powers, *see id.* § 203(e)(2)(C)(ii)(IV), and (4) employees of a state legislative branch or body that is not a legislative library, *see id.* § 203(e)(2)(C)(ii)(V). *See also Ellington v. City of East Cleveland*, 689 F.3d 549, 553 (6th Cir. 2012).

[4] Technically, this is an "exception" to the FLSA's definition of "employee" and not explicitly codified as an "exemption." *See* 29 U.S.C. § 213 (listing various statutory exemptions). Yet courts sometimes loosely refer to the carveout for personal staff as an "exemption" to the FLSA. *See, e.g.*, *Birch v. Cuyahoga Cnty. Prob. Ct.*, 392 F.3d 151, 161 (6th Cir. 2004). When they do in a case we cite, we use that court's terminology.

10

(noting the personal staff exception to the Equal Pay Act); 29 U.S.C. § 2611(3); *see also E.E.O.C. v. Sidley Austin Brown & Wood*, 315 F.3d 696, 708 (7th Cir. 2002) (Easterbrook, J., concurring) (observing that similar definitions of the term "employee" are in "wide use" among federal employment statutes). Courts have taken the sensible approach of interpreting the FLSA's personal staff exception consistently with its counterparts in other statutes, including Title VII. *See, e.g.*, *Birch*, 392 F.3d at 161 (citing *Nichols v. Hurley*, 921 F.2d 1101, 1110 (10th Cir. 1990) (per curiam)); *Brewster v. Barnes*, 788 F.2d 985, 990 n.7 (4th Cir. 1986) (noting that the "personal staff" exemption in Title VII and the FLSA are "essentially identical").[5]

In its regulations, the federal Department of Labor explained that the term "'member of personal staff' generally includes only persons who are under the direct supervision of the selecting elected official and have regular contact with such official." 29 C.F.R. § 553.11(b); *see also Nichols*, 921 F.2d at 1103. The regulation further elaborates that personal staff "must be appointed by, and serve solely at the pleasure or discretion of, the elected official." 29 C.F.R. § 553.11(c). We do not know of any cases challenging the Department's interpretation and, as explained below, do not need to scrutinize its approach, which is largely consistent with judicial precedents in other circuits.

---

[5] *Compare* 42 U.S.C. § 2000e(f) (in Title VII, "the term 'employee' shall not include any person . . . chosen by [an elected officer] to be on such officer's personal staff"), *with* 29 U.S.C. § 203(e)(2)(C) (in the FLSA, carving out individuals "selected by the holder of [a public elective office] to be a member of his personal staff").

## 2. *The Teneyuca factors*

By far the leading case on the personal staff exception is the Fifth Circuit's decision in *Teneyuca v. Bexar County*, 767 F.2d 148, 151 (5th Cir. 1985). At least the Sixth, Eighth, and Tenth Circuits favor it, along with District Courts in our Circuit. *See Hemminghaus v. Missouri*, 756 F.3d 1100, 1108 (8th Cir. 2014); *Birch*, 392 F.3d at 158 (6th Cir. 2004); *Nichols*, 921 F.2d at 1110 (10th Cir. 1990); *Conley v. City of Erie*, 521 F. Supp. 2d 448, 453 (W.D. Pa. 2007); *Marburger v. Upper Hanover Twp.*, 225 F. Supp. 2d 503, 510 (E.D. Pa. 2002).

*Teneyuca* devised a list of six factors based on its review of case law at the time. They are:

> (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Teneyuca*, 767 F.2d at 151.

The list "is not intended to be exhaustive," and the analysis is "highly factual," requiring courts to examine the "nature and circumstances of the employment relationship between the complaining individual and the elected official." *See id.* at 151–52 (internal citation and quotation marks omitted).[6] Hence we are not surprised courts have added more factors to the mix. *See Marburger*, 225 F. Supp. 2d at 510–14 (following *Teneyuca* while considering additional factors). Echoing the *Teneyuca* framework, the Fourth Circuit in *Cromer v. Brown*, 88 F.3d 1315, 1323 (4th Cir. 1996), listed eight non-exhaustive factors.[7] Even there "[t]he factors . . . are

---

[6] Accordingly, the focus is not on a person's job title. In situations where employees have the same title but a meaningfully different working relationship with the elected official, it is possible that some are members of the official's personal staff but others are not.

[7] They are (1) whether "promotion of the employee [is] solely up to the [elected official]"; (2) whether "the employee occup[ies] a position high in the chain of command"; (3) whether "the employee ha[s] a highly intimate working relationship with the [elected official]"; (4) whether "the employee contribute[s] to the making of policy decisions in the [elected official's] department"; (5) "whether the employee's position was created and compensated by the county pursuant to state law"; (6) what "the full scope of the employee's duties" was; (7) "whether the employee worked in the official's political campaign"; and (8) "whether the employee worked under the direction of the official or someone else." *Cromer*, 88 F.3d at 1323 (internal citation and quotation marks omitted). For a comparison of the overlap between the Fifth and Fourth Circuit tests, see Henry Leaman, *Narrowing the Trapdoor of*

13

not intended to round out a rigid list. A fact-specific examination of the employee's role is what is required." *Id.*

Arriving at a definitive set of factors is a Sisyphean task, as some may be more relevant in one context but not another. Having considered the *Teneyuca* factors, related case law, and the relevant statute and regulations, we distill two themes for our analysis, as "[t]oo often the factors in a checklist . . . result[] in rote following of a form containing factors where courts tally up and spit out a score without an eye on the principles." *See In re Owens Corning*, 419 F.3d 195, 210 (3d Cir. 2005).

First, for an employee to be the personal staff of an elected official, he must work closely with the official in a sensitive position of trust and confidence. This theme is at the core of the personal staff exception's purpose: to "exempt from [employment law] coverage those who are chosen by . . . the elected official . . . . , and who are in a close personal relationship and an immediate relationship with him." *Teneyuca*, 767 F.2d at 152 (quoting 118 Cong. Rec. 4492–93 (1972)). Indeed, many courts have emphasized a close working relationship between the elected official and members of his or her personal staff as the overarching consideration. *See id.* (noting the exception "appl[ies] only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official" (quoting *Owens v. Rush*, 654 F.2d 1370, 1375 (10th Cir. 1981)); *Cromer*, 88 F.3d at 1323; *Conley*, 521 F. Supp. 2d at 453.

---

*the Government Employee Rights Act*, 95 Notre Dame L. Rev. 413, 434 (2019).

14

Four of the *Teneyuca* factors help assess the closeness of the working relationship—whether the position is personally accountable only to the official (factor 2), whether those in that position represent the elected official in the eyes of the public (factor 3), the level of the position within the organization's chain of command (factor 5), and whether those in the position handle sensitive and confidential information for the elected official (referred to as "actual intimacy of the working relationship" in *Teneyuca*) (factor 6). *See Teneyuca*, 767 F.2d at 151. There is already significant overlap between factors 2 and 5, as both address whether the elected official is a direct and immediate supervisor for the position. *See Montgomery v. Brookshire*, 34 F.3d 291, 296 (5th Cir. 1994) (explaining that "[t]he personal staff exception becomes less applicable the lower the particular employee's position because the exception was primarily intended to exempt the elected official's immediate subordinates") (internal quotation marks omitted). Factor 3 is mostly self-explanatory, though it may not be applicable in situations where the elected official seldom interacts with the public.

Factor 6, described in *Teneyuca* as the "actual intimacy of the working relationship," 767 F.2d at 151, is difficult to measure objectively, *see Nichols*, 921 F.2d at 1110. As closeness of the working relationship is already an overarching theme for analysis, we believe the factor is better framed as whether the employee handles sensitive and confidential information for the elected official. *See id.* at 1111 (examining whether employees were "privy to sensitive information" in assessing the intimacy of the working relationship); *see also Bland v. New York*, 263 F. Supp. 2d 526, 540 (E.D.N.Y. 2003) (explaining that a personal secretary who controlled the flow of information to an elected official was placed in a "sensitive"

15

and "intimate" position of trust that rendered her a member of the personal staff).

In sum, to qualify for the exception, members of an elected official's personal staff must have a close working relationship with that official, often demonstrated by the official's direct and immediate supervision over personal staff, regular contact between them, and personal staff being trusted to handle sensitive or confidential information and decisions.[8]

The second theme involves the official's personal control over the employee's hiring, promotion, work conditions, discipline, and termination. This encompasses the remaining *Teneyuca* factors—whether the elected official has plenary powers to hire and fire (factor 1), while exercising considerable control over the actions of the employee (factor 4) who answers only to the official (factor 2, which also relates to the first theme above). *Teneyuca*, 767 F.2d at 151.

To evaluate this theme, courts should first consider whether the elected official (or a predecessor) selected his or her personal staff, as indicated by 29 U.S.C.

---

[8] While personal staff at times may contribute to departmental policy or participate in authoritative decision-making, this is typically not a relevant consideration. *See, e.g.*, *Nichols*, 921 F.2d at 1111 (suggesting policymaking is "not pertinent to the personal staff exception"). *But see Cromer*, 88 F.3d at 1323 (examining whether "the employee contribute[s] to the making of policy decisions"). As noted above, there is a separate exception to the FLSA's definition of "employees" for those selected by an elected official "to serve on a policymaking level." *See* 29 U.S.C. § 203(e)(2)(C)(ii)(III).

16

§ 203(e)(2)(C)(ii)(II) of the FLSA (stating the exception for those "*selected* by the holder of [a public elective office] to be a member of his personal staff") (emphasis added). Further, courts may look to whether the official has power over the employee's termination, *see Teneyuca*, 767 F.2d at 151, and promotion, *see Cromer*, 88 F.3d at 1323, and exercises considerable control over the manner and conditions of the employee's work, *see Hemminghaus*, 756 F.3d at 1108–09 (finding a court reporter was a member of a judge's personal staff in part because the judge determined the reporter's work and leave schedule).

This second theme underscores that elected officials can and do exert more control over their personal staff than typical supervisors might over employees, the latter having less concentrated control through a chain of command. In colloquial terms, elected officials hold all the cards in the working relationship with members of their personal staff.

Putting all this together, for an employee to be a member of an elected official's personal staff, 1) the official must work closely with the employee in a sensitive position of trust and confidence, and 2) the official exercises personal control over the employee's hiring, promotion, work conditions, discipline, and termination. These two themes also track the Department of Labor's guidance that personal staff are "under the direct supervision of the selecting elected official and have regular contact with such official," 29 C.F.R. § 553.11(b), and "must be appointed by, and serve solely at the

pleasure or discretion of, the elected official," 29 C.F.R. § 553.11(c).[9]

No doubt these two themes often overlap, and we do not mean to suggest that any factor falls neatly into one bucket or the other. And while both themes should be satisfied to apply the personal staff exception, no single factor is dispositive. Context matters. To be clear, our two-themed approach does not do away with a court considering the factors in *Teneyuca*. To the extent they are relevant to one or both parts of our approach, they should be considered in deciding if an individual is a member of the elected official's personal staff. If "there is no genuine issue of material fact as to the applicability of the relevant [themes]" and their application is so one-sided that no reasonable jury could disagree with the result, summary judgment is appropriate. *Birch*, 392 F.3d at 158. Otherwise, it is not.

---

[9] This language can be read as adopting a bright-line rule that the first *Teneyuca* factor—"whether the elected official has plenary powers of appointment and removal"—must be satisfied for the personal staff exception to apply. *Teneyuca*, 767 F.2d at 151. While we acknowledge this is an important consideration, we decline to adopt a rule that would contravene a fact-intensive approach that does not give dispositive weight to any single factor. *Cf. Hemminghaus*, 756 F.3d at 1109–10 (concluding that the reasoning in a Department of Labor opinion on the application of the personal staff exception is unpersuasive, as it fails to consider the facts of the specific case).

### *3. Application*

The parties do not dispute that the Coroner, Dr. Moylan, is an elected official and that the Plaintiffs are not civil servants under Pennsylvania law. Thus the dispute is about whether the Plaintiffs are members of the Coroner's personal staff and therefore not covered employees for purposes of the FLSA. The District Court applied *Teneyuca* and granted summary judgment in favor of the County, concluding that the Plaintiffs as Deputy Coroners fell within the personal staff exception. Reviewing the record using the framework set out above, we believe there are genuine disputes of material fact that render summary judgment inappropriate on this issue.

First, based on the available record, we are not convinced that the Deputy Coroners had a sufficiently close working relationship with Dr. Moylan to be considered his personal staff. At the outset, we disagree with the District Court that "there are no disputed facts and the analysis is straightforward" as to whether the Plaintiffs "worked closely" with Dr. Moylan. *Clews*, 461 F. Supp. 3d at 152. The record is mixed as to the amount of regular contact the Plaintiffs had with him, and the Plaintiffs' own deposition testimony was inconsistent.[10] *See id.* at 153 (acknowledging Detweiler's testimony that she does not "speak as much" to Dr. Moylan).

---

[10] A careful reader might notice it is possible to affirm the grant of summary judgment in favor of the County for Pothering and not Clews or Detweiler. While it is theoretically possible for some but not all the Plaintiffs to be members of Dr. Moylan's personal staff, we do not see any evidence or allegations from the record that the Plaintiffs had meaningfully different working relationships with Dr. Moylan.

19

*Compare* App. at 68–69 ("Q. How closely did you work with Dr. Moylan? [Clews]: Actually not close at all . . . . We only had to contact him for—to get, talk to him about the cause of death or that at a case. We didn't—you didn't deal with him too often.") *with* Suppl. App. at 17 ("Q. How closely did you work with Dr. Moylan? [Pothering]: Pretty close . . . . Q. How often would you [work together]? [Pothering]: Could be on a daily basis.").

We also think the number of Deputy Coroners undermines the conclusion that Dr. Moylan worked closely with all of them. *Cf. Montgomery*, 34 F.3d at 297 (concluding the district court erred by granting summary judgment because the result "would encompass all 113 law enforcement officials in the [] County" under the personal staff exception and "is inconsistent with the congressional intent that the exception be narrowly construed"). The Coroner's office employed around twenty Deputy Coroners, *see* Suppl. App. at 12, and there is no evidence that the Plaintiffs had different responsibilities than other Deputy Coroners. We doubt that all of them worked in a sensitive position of trust and confidence with Dr. Moylan, though we recognize this is a context-dependent inquiry that could be influenced by the size of the locality and the specific job functions.[11]

We are also unpersuaded by the District Court's evaluation of two other factors relevant to determining a close

---

[11] Inversely, the official's employment of very few people for a role "does not by itself render the position . . . within the [official's] personal staff," as a small workforce is common in rural or less populated areas. *See United States v. Gregory*, 818 F.2d 1114, 1117 (4th Cir. 1987).

working relationship—that the Plaintiffs were personally accountable to the Coroner (*Teneyuca* factor 2) and that they "were directly below the [C]oroner in the chain of command" (*Teneyuca* factor 5). *Clews*, 461 F. Supp. 3d at 152. The Plaintiffs allege they reported not only to Dr. Moylan but also to Dr. Weber, the Chief Deputy Coroner. They argue that only the Chief Deputy should be considered a member of the Coroner's personal staff, and the other so-called Deputy Coroners are merely investigators and run-of-the-mill employees. Indeed, the record does not clearly show whether Dr. Moylan or Dr. Weber was their more direct supervisor. *See Clews*, 461 F. Supp. 3d at 143 (acknowledging that, while on duty, the Plaintiffs "were either called by Dr. Moylan or his [C]hief [D]eputy [C]oroner"); *Nichols*, 921 F.2d at 1113 ("[B]eing personally accountable to someone other than the elected official means that the employee does not serve solely at the pleasure of the elected official, but of others as well."). Further, if Dr. Moylan died or was removed, it would be Dr. Weber who would "execute the office of [C]oroner [and] perform related duties." 16 Pa. Stat. and Cons. Stat. Ann. § 1232-B (West 2021). All this suggests that a jury could conclude Dr. Weber, rather than the Deputy Coroners, was Dr. Moylan's top adviser. *Teneyuca*, 767 F.2d at 152 (citation omitted); *see also* 29 C.F.R. § 553.11(b) (stating that personal staff "typically does not include individuals who are directly supervised by someone other than the elected official even though they may have been selected by the official"); *Montgomery*, 34 F.3d at 296 (explaining the exception "becomes less applicable the lower the particular employee's position").

Although the Deputy Coroners represented the Coroner in the eyes of the public (*Teneyuca* factor 3) and likely handled

sensitive and confidential information because they were often the first at the scene of a death (*Teneyuca* factor 6), those factors alone cannot justify granting summary judgment for the County. As the above discussion indicates, there are several factual disputes about whether Dr. Moylan worked closely enough with the Plaintiffs to support application of the personal staff exception; thus granting summary judgment would require us impermissibly to "weigh evidence or determine credibility questions." *Hill v. City of Scranton*, 411 F.3d 118, 131 (3d Cir. 2005).

Continuing on, we see little to conclude that the Coroner exercises the required amount of control over the Deputy Coroners for them to be his personal staff. Although the Coroner (Dr. Moylan and his predecessor) hired all three Plaintiffs, the extent of his authority over hiring and firing decisions is unclear. The District Court acknowledged that although the Coroner "initiates the hiring and termination processes," he must complete a "Personal Action Request" that is then approved by the Board of Commissioners for final authorization. *Clews*, 461 F. Supp. 3d at 151.[12] The Court

---

[12] The District Court cited to the Second Class County Code about the appointment and removal of Deputy Coroners to conclude that Dr. Moylan has "plenary powers." *Clews*, 461 F. Supp. 3d at 151. As explained above in note 1, Schuylkill County is not a Second Class or Second Class A county and is thus not subject to the Second Class County Code. *See* 16 Pa. Stat. and Cons. Stat. Ann. § 210 (West 2021) (specifying a county must have more than 500,000 people to be a Second Class A county and more than 1 million people to be a Second Class county); *see also id.* § 3102 ("Except where otherwise

viewed the County Commissioners' approval of the termination of Pothering and Clews as a "formality" that did not diminish Dr. Moylan's authority. *Id.* at 19. But this is not clearly supported by the record. For instance, the District Court reached this conclusion based on its belief that "the Commissioners approved [the] termination[s] before discussing the circumstances." *Id.* However, their minutes reveal that, before the vote, Chwastiak explained the overtime issue to the Commissioners, and one of them asked her a follow-up question. App. at 37. And while Detweiler continuing to work as a Deputy Coroner after her termination suggests Dr. Moylan could override the Commissioners' action, no one could explain the exact circumstances of her continued employment. *See* Oral Arg. Tr. 23:22–24:5. We are not taking a position on this item, as a reasonable juror could conclude that, despite these complexities, Dr. Moylan was in practice the one with the power to hire and fire Deputy Coroners. Still, based on the facts before us and viewing them in the light most favorable to the Plaintiffs, we do not agree that the undisputed evidence shows that Dr. Moylan could "hire and fire [D]eputy [C]oroners at will." *Clews*, 461 F. Supp. 3d at 151.

The District Court further concluded that "the [C]oroner exercised a considerable amount of control over [the Deputy Coroner] position[]." *Id.* at 21. However, it did not make specific findings about how Dr. Moylan controlled the Plaintiffs' employment (for example, if he set the Plaintiffs' schedule or handled disciplinary matters). Further, the record is unclear whether Dr. Moylan or his Chief Deputy exercised

specifically limited, this [Second Class County Code] applies to all counties of the second class and second class A.").

23

greater control and supervision over the Deputy Coroners' work conditions and hours. And even if we were satisfied that Dr. Moylan exercised personal control over the Deputy Coroners' positions, the genuine factual disputes about whether they worked closely together means summary judgment is not appropriate at this time.

\*　　\*　　\*　　\*

The personal staff exception is meant to carve out from the FLSA's protections those who work closely with an elected official in a sensitive position of trust and confidence and over whom the official exercises personal control. In this case, we cannot conclude that the Deputy Coroners in Schuylkill County fall under the personal staff exception based on undisputed facts. Thus, we vacate the District Court's order granting summary judgment and remand for further proceedings.