**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1497
_____

RESAT KELES,

Appellant

v.

BARBARA E. BENDER; HUSAM NAJM; KAAN OZBAY; NENAD GUCUNSKI;
GINA CULLARI; RICHARD BIRD; JEREMY J. KUKOR; ROBERT L. BARCHI; THE
BOARD OF GOVERNORS/THE TRUSTEES OF RUTGERS, The State University of
New Jersey

_____

On Appeal from the United States District Court for the
District of New Jersey
(District Court No. 2:17-cv-01299)
District Court Judge: Kevin McNulty

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 11, 2022

(Filed: March 18, 2022)

Before: KRAUSE, SCIRICA, and RENDELL, *Circuit Judges*.
_____

O P I N I O N[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**RENDELL**, *Circuit Judge.*

In May 2014, Resat Keles received a Master of Science in Transportation Engineering from the Department Civil and Environmental Engineering ("CEE Department") of Rutgers, the State University of New Jersey ("Rutgers" or the "University"). After his graduation, Rutgers informed Keles, who sought to continue his studies as a doctoral student, that he could no longer enroll in classes as he was no longer affiliated with the University. Keles sued Rutgers, raising several claims that stemmed from his ineligibility to continue his studies. The District Court granted summary judgment in favor of Rutgers. We discern no error in the District Court's analysis, and we will therefore affirm.

I.

In 2008, Keles applied for admission into Rutgers's CEE Department's graduate program as a Ph.D. student. He received his certificate of admission for Rutgers's 2009 spring term, which confirmed that he had been admitted as a Ph.D. student. Keles, however, never enrolled in classes that term. Consequently, his offer of admission lapsed, and Rutgers required Keles to reapply. After discussing the matter with his prospective advisor, Keles reapplied and was admitted as a M.S. student for the University's 2009 fall term.[1] Working under the supervision of various professors over the course of his studies, Keles received his M.S. degree in May 2014.

---

[1] Keles contends that he was admitted to the "M.S./Ph[.]D. Program Track." Appellant's Opening Br. 17. Although his communications with Rutgers suggest that he was pursuing a "doctoral track masters," R368, the CEE Department does not distinguish

2

While pursuing this degree, Keles expressed his interest in continuing his studies as a Ph.D. student within the CEE Department. To continue their studies as Ph.D. students, M.S. students in the CEE Department must satisfy several prerequisites, including submitting a "Change-in-Status" form. The CEE Department's handbook informs that such students "should file an application with the graduate director," and that these students' "M.S. committee[s] will review the application and make a recommendation to the graduate director for approval." R157; R327 (same). The CEE Department required that M.S. students identify advisors and describe their research plans in their Change-in-Status forms as an initial step.

At the end of the M.S. program, Keles submitted an incomplete Change-in-Status form. The CEE Department's Graduate Program Director, Professor Husam Najm, informed Keles that, to enter the Ph.D. program, he would need to complete the form, which he could do by identifying an advisor or describing his research plan. Keles, however, disputed that he needed to submit a completed Change-in-Status form due to his claimed enrollment as an M.S.-Ph.D. student. Members of the CEE Department and the University's administration informed him that he needed to satisfy the admission prerequisites to continue his studies. Keles neither found an advisor nor submitted a completed Change-in-Status form. Consequently, he was not admitted to the Ph.D. program.

---

between terminal and Ph.D.-bound M.S. students in terms of the requirements that a student must fulfill to proceed to the Ph.D. program.

3

Keles continued to seek to register for classes at Rutgers in 2015He, however, no longer had academic standing because he completed his M.S. studies and had not been admitted into another graduate program. Accordingly, the University's Administration informed Keles that his lack of academic standing prevented him from registering for any courses at the University.[2]

In 2017, Keles sued Rutgers and several individual defendants in New Jersey State Court, alleging contract, tort, statutory, and due process claims. After the case was removed to federal court, the District Court dismissed Keles's tort and state statutory claims and, in doing so, dismissed all claims against the individual defendants.[3] The case proceeded to discovery on the remaining claims against Rutgers: breach of contract, breach of the implied covenant of good faith and fair dealing, violation of due process under the New Jersey Constitution, and violation of due process under the United States Constitution. After discovery, Rutgers moved for summary judgment. In February 2021, the District Court granted Rutgers's motion.

Keles timely appealed the District Court's order granting Rutgers's motion for summary judgment.

---

[2] Keles also had a financial hold which prevented him from registering for classes.

[3] Keles appealed the District Court's order dismissing these claims, and we dismissed the appeal for lack of jurisdiction. *R.K. v. Bender*, No. 17-3574, 2018 WL 11232796 (3d Cir. July 31, 2018).

4

II.[4]

The District Court granted summary judgment on all four of Keles's claims. We consider each in turn.

A. *Breach of Contract*

Under New Jersey law, "the relationship between [a] university and its students should not be analyzed in purely contractual terms." *Mittra v. Univ. of Med. & Dentistry of N.J.*, 719 A.2d 693, 694 (N.J. Super. Ct. App. Div. 1998); *see also Napolitano v. Trs. of Princeton Univ.*, 453 A.2d 263, 272 (N.J. Super. Ct. App. Div. 1982). To be sure, university students may pursue breach of contract claims against their academic institutions. *See Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 373-74 (D.N.J. 2021). That said, when the claim pertains to an academic decision, courts consider only whether the university adhered to its policies and procedures when it made that decision. *Mittra*, 719 A.2d at 697.

Recognizing its limited role, the District Court held that Rutgers did not "breach[] any policy, let alone in a substantial and clearly identified way" when it did not permit Keles to continue his studies as a Ph.D. student. R436-37 (internal quotation marks and

_____

[4] The District Court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). We have jurisdiction under 28 U.S.C. § 1291. We engage in "plenary (that is, unrestricted) review" of the District Court's grant of summary judgment. *Clews v. Cnty. of Schuylkill*, 12 F.4th 353, 358 (3d Cir. 2021). During this review, we consider "the facts in the light most favorable to the nonmoving party." *Id.* We will affirm a grant of summary judgment "only where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (internal quotation marks and citation omitted).

5

citation omitted).  We agree.  Under the CEE Department's policies, Keles needed to submit a Change-in-Status form to the Department's Graduate Program Director as one of the first steps to seek admission to the Ph.D. program.  The Department alerted M.S. students, who, like Keles, wished to continue their studies as Ph.D. students, to this prerequisite in its handbook, which explained that "[s]tudents who completed the department's M.S. degree requirements and are interested in continuing to the doctoral program should file an application with the graduate director," and that their admission would require the Graduate Program Director's "approval."  R157 (2009 handbook); R327 (2015 handbook).  Although Keles was aware of this requirement, he never submitted a completed application.  Rather than departing from its "published rules and regulations," *Mittra*, 719 A.2d at 698, Rutgers followed them.

Keles contends that, because Rutgers admitted him as a Ph.D. student in 2009, he never needed to reapply to the Ph.D. program.  He is mistaken.  The CEE Department admitted Keles as a Ph.D. student for the 2009 spring term, but his offer of admission lapsed when he failed to enroll in classes that term.  Indeed, he began his studies at Rutgers in the fall of 2009 only after he applied to and was admitted to the M.S. program.  After Rutgers readmitted him, Keles claims that Rutgers misclassified him as a terminal M.S. student rather than as  an M.S.-Ph.D. student.  This is a distinction without a difference; all M.S. students must seek admission to the Ph.D. program to continue their studies beyond their initial programs.  Keles did not.  Rutgers adhered to its policies, so we see "no sound basis for [further] judicial intervention in this case." *Mittra*, 719 A.2d at 698.

*B. Breach of the Implied Covenant of Good Faith and Fair Dealing*

All contracts contain an implied covenant of good faith and fair dealing under New Jersey law. *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001). To establish a breach of this covenant, the plaintiff must show "that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 396 (N.J. 2005) (internal quotation marks and citation omitted). Whether it breaches this covenant turns on whether the party to the contract "exercises its discretionary authority [under that contract] arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its *reasonably expected fruits under the contract*." *Wilson*, 773 A.2d at 1130 (emphasis added).

The District Court granted summary judgment for Rutgers on Keles's claim because (1) the record demonstrated that Keles "was [not] denied anything to which he was entitled by contract," and (2) even if he were, Keles presented no evidence that Rutgers denied him a contractual entitlement in bad faith. R439. We agree. For the reasons explained above, Keles never had a contractual right to continue his studies as a Ph.D. student, and the record reveals no evidence Rutgers acted in bad faith. Consequently, he cannot seek recourse under the covenant of good faith and fair dealing.

*C. Violation of Due Process*[5]

Turning to Keles's procedural due process claims first, we agree with the District Court's analysis. Procedural due process requires "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."[6] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted). The type of notice and the type of hearing the Due Process Clause requires, however, depends on the context. *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). And, in academic settings, more informal forms of notice and hearings suffice. *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 89-90 (1978). Before a public university dismisses a student for disciplinary reasons, the Due Process Clause requires that it afford "rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion." *See Goss v. Lopez*, 419 U.S. 565, 581 (1975) (considering the requirements when suspending a student). If the university dismisses a student for academic reasons, it faces an even lower hurdle; it need only provide "an 'informal-give-and-take' between the student and the administrative body"

---

[5] Keles brings due process claims under both the New Jersey and United States Constitutions. New Jersey courts employ the United States Constitution's standards when assessing procedural and substantive due process claims under the New Jersey Constitution. *See Roman Check Cashing, Inc. v. N.J. Dep't of Banking & Ins.*, 777 A.2d 1, 3 (N.J. 2001); *State ex rel. Cumberland Cnty. v. One 1990 Ford Thunderbird*, 852 A.2d 1114, 1125 (N.J. Super. Ct. App. Div. 2004). Thus, we analyze Keles's state and federal claims together.

[6] As the District Court noted, whether Keles had a property interest in his continued graduate education is not at issue, and Rutgers has advanced no such argument before us.

8

responsible for the dismissal. *Mauriello v. Univ. of Med. & Dentistry of N.J.*, 781 F.2d 46, 50 (3d Cir. 1986) (quoting *Horowitz*, 435 U.S. at 90).

The District Court, which assumed that Rutgers's decision to deny Keles the opportunity to continue to register for classes qualifies as a dismissal,[7] determined that there was no genuine issue of material fact that Rutgers afforded Keles sufficient process before dismissing him. Before us, Keles argues that the District Court erred, contending that Rutgers's procedures fell short of the Due Process Clause's requirements because it failed to conduct an "informal faculty evaluation" before dismissing him, *Mauriello*, 781 F.2d at 51, and to ensure its decision to dismiss him "was careful and deliberate," *Horowitz*, 435 U.S. at 85. These contentions lack support. As the District Court recognized, Rutgers (1) published its requirements for M.S. students to be admitted to the Ph.D. program in the graduate student handbook, (2) informed Keles repeatedly of his need to satisfy these requirements if he intended to continue his studies, (3) allowed Keles to present his position to the University's faculty and administration, and (4) determined and informed Keles that he no longer had academic standing after he failed to satisfy the prerequisites for admission to the Ph.D. program. The Due Process Clause does not require Rutgers to do more. Thus, we too conclude that Rutgers is entitled to summary judgment on Keles's procedural due process claims.

---

[7] We, too, assume that Rutgers dismissed Keles for our analysis, yet we note the oddity of doing so. Rutgers no longer allowed Keles to take classes because he completed his course of study, graduated, and received his degree.

9

Keles also advances substantive due process claims. The District Court addressed Keles's procedural due process claims alone, reasoning that he had failed to develop his substantive ones. We need not decide whether Keles preserved these claims for appeal because they fail on the merits.[8]

Neither we nor the Supreme Court have held that students have a constitutionally protected interest in continued graduate education. *See Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 222-23 (1985); *Mauriello*, 781 F.2d at 52. Rather, when faced with claims like Keles's, both we and the Court have assumed that the Due Process Clause protects the asserted interest. *Ewing*, 474 U.S. at 222-23; *Mauriello*, 781 F.2d at 52. We do the same here.

As we review Keles's substantive due process claim, "we are required to show 'great respect for the faculty's professional judgment.'" *Mauriello*, 781 F.2d at 52 (quoting *Ewing*, 474 U.S. at 225). We consider only whether Rutgers "acted arbitrarily" in determining that Keles no long had academic standing after he graduated from his M.S. program. *Ewing*, 474 U.S. at 225. In other words, for Keles's claim to survive summary judgment, there must be a genuine issue of material fact that Rutgers's decision constituted "such a substantial departure from accepted academic norms as to demonstrate that [it] did not actually exercise professional judgment." *Ewing*, 474 U.S. at 225.

---

[8]

Keles's claim fails because the record reveals no such issue. Rutgers maintained a policy that restricted academic standing to students currently enrolled in graduate programs. After he graduated, Keles was no longer enrolled in any Rutgers graduate program. Although he wished to continue his studies as a doctoral student, Rutgers did not admit him into the CEE Department's Ph.D. program. Keles argues that Rutgers acted arbitrarily because, in internal emails, the University's administration suggested that Keles was mistakenly placed on a terminal rather than continuing M.S. track. But, for the reasons discussed above, Keles's potential misclassification is irrelevant. He never fulfilled the prerequisites to continue his studies, and thus Rutgers, following its policy, determined that he could not continue to register for classes after he graduated. Given these facts, Rutgers did not venture "beyond the pale of reasoned academic decisionmaking" when it dismissed Keles. *Mauriello*, 781 F.2d at 52 (quoting *Ewing*, 474 U.S. at 227-28).

## III.

For these reasons, we will affirm the District Court's judgment.

11