**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1185
_____

ARTOSS, INC.

v.

ARTOSS GMBH; THOMAS GERBER; WALTER GERIKE,

ARTOSS GMBH,
Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-20-cv-00741)
District Judge: Honorable Robert T. Dawson
_____

Submitted Under Third Circuit LAR 34.1(a)
June 3, 2024

Before: HARDIMAN, PORTER, and AMBRO, *Circuit Judges*.

(Filed: June 4, 2024)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**HARDIMAN**, *Circuit Judge*.

Artoss GmbH (GmbH) appeals a post-trial judgment on a claim for breach of contract and counterclaims for breach of contract and trademark infringement. GmbH challenges the sufficiency of the evidence for a specific jury finding and also claims the District Court made procedural and evidentiary errors. We will affirm.

I

This appeal arises out of a dispute between GmbH, a German medical device company, and Artoss, Inc. (Artoss), its North American distributor of an implantable synthetic bone-grafting product called NanoBone. Under the parties' Distribution Agreement, all "trademarks," "trade names," and other "proprietary rights . . . associated" with NanoBone products belonged exclusively to GmbH, which was allowed to terminate the agreement if it "reasonably determine[d] that [Artoss] . . . negligently or intentionally acted in a manner which adversely affect[ed]" GmbH's "trademark rights." App. 645, 647. Meanwhile, the Distribution Agreement specified that GmbH was not permitted to increase its prices except "upon mutual agreement," and it was entitled to payment for products it supplied to Artoss only after those products were sold. App. 644.

In June 2020, Artoss sued GmbH for breaching the Distribution Agreement after GmbH refused to ship new NanoBone products to Artoss without advance payment. Nevertheless, Artoss conditionally pre-paid for inventory pending resolution of its lawsuit. A few months later, GmbH unilaterally raised prices on all NanoBone products. Finally, GmbH purported to terminate the Distribution Agreement in April 2021, alleging that Artoss had "registered certain trademarks on material associated with" NanoBone

2

products and "commenced an attempt to rebrand . . . GmbH's products as products . . . of Artoss." App. 770. Artoss filed an amended complaint based on GmbH's price increases and its termination of the Distribution Agreement.

In pre-trial motions, Artoss sought to exclude evidence intended to show it had failed to sell NanoBone products on a first-in-first-out basis, a standard industry practice in which older inventory is sold before newer inventory to minimize waste for medical products with a limited shelf life. GmbH asserted that this evidence was necessary to rebut Artoss's claim that GmbH's demand for advance payment breached the Distribution Agreement. The District Court ruled in favor of Artoss, concluding that "*[w]hy* [Artoss] may have allegedly built up excess inventory or allowed product to expire [wa]s not at issue." App. 17. Also prior to trial, GmbH objected to instructing the jury on nominative fair use, arguing that even if Artoss had timely pleaded this affirmative defense to GmbH's trademark infringement counterclaims, it was "legally inapplicable" to the facts of the case. App. 527. The Court overruled this objection and instructed the jury accordingly.

The jury found that: (1) GmbH breached the Distribution Agreement and acted wrongfully when it terminated the Agreement; and (2) Artoss did not breach the Agreement or violate any of GmbH's trademark rights. Following the damages phase of the trial, the jury awarded $1,260,821 to Artoss. The District Court then denied GmbH's renewed motion for judgment as a matter of law as well as its motion to amend the judgment and transfer ownership of NanoBone-related trademark registrations and

3

applications from Artoss to GmbH. After the District Court entered final judgment, GmbH timely appealed.[1]

## II

GmbH urges us to reverse the District Court's order denying its renewed motion for judgment as a matter of law "because the undisputed evidence at trial [provided] a sound contractual basis for termination." GmbH Br. 18. Exercising plenary review, we may grant such a motion "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Ambrose v. Township of Robinson*, 303 F.3d 488, 492 (3d Cir. 2002) (cleaned up). GmbH claims it was permitted to terminate the Distribution Agreement because Artoss "engaged in a deliberate campaign to misuse . . . GmbH's marks and misappropriate them as its own." GmbH Br. 25. We disagree.

GmbH's sole trademark at issue here is the word "NanoBone," "consist[ing] of standard characters without claim to any particular font, style, size, or color." App. 725 (capitalization omitted). There was substantial evidence at trial demonstrating that Artoss never attempted to register "NanoBone," never challenged the ownership or validity of the trademark, nor deprived GmbH of its right to use or exercise control over it.[2] Rather,

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

[2] *S & R Corp. v. Jiffy Lube Int'l, Inc.* is inapposite because, unlike in this case, the franchisee was using "the same legally protectable trademark[] owned by Jiffy Lube." 968 F.2d 371, 375 (3d Cir. 1992).

4

Artoss used the word only to promote and sell NanoBone products. So it was reasonable for the jury to conclude that Artoss never "adversely affected" GmbH's "trademark rights."[3] App. 647. And because this was the only applicable basis for GmbH to terminate the Distribution Agreement, its arguments on appeal that Artoss violated other provisions of the Distribution Agreement are unavailing.

GmbH also emphasizes that Artoss "created and released an unauthorized stylization of the NanoBone[] mark and sought to obtain protection in its own name for *elements of that stylization*." GmbH Br. 27 (emphasis added). But this argument fails because GmbH's trademark encompasses only the word itself. The logos that Artoss created incorporating the original stylized NanoBone mark or generic scientific terms like "nanobiology," "ossification," and "osteogenesis" are thus distinct from the NanoBone trademark.

Because it was not unreasonable for the jury to conclude that GmbH wrongfully terminated the Distribution Agreement, we cannot disturb its finding.

## III

GmbH also argues that the District Court erred when it instructed the jury on nominative fair use, a purportedly "inapplicable [affirmative] defense that [Artoss] did not plead and did not mention until the eve of trial." GmbH Br. 20. Because the Court did

---

[3] GmbH contends that Artoss violated its trademark rights by claiming ownership of the word "NanoBone" on both its website's "Terms of Use" page and in its brand manual. But evidence at trial showed that no members of the general public saw either the webpage or the manual. So it was reasonable for the jury to conclude that these actions by Artoss did not adversely affect the "NanoBone" trademark.

not misstate the legal standard for liability, we review for abuse of discretion. *See Griffiths v. CIGNA Corp.*, 988 F.2d 457, 462 (3d Cir. 1993), *overruled on other grounds*, *Miller v. CIGNA Corp.*, 47 F.3d 586 (3d Cir. 1995) (en banc). "If, *looking at the charge as a whole*, the instructions were capable of confusing and thereby misleading the jury, we must reverse." *Mosley v. Wilson*, 102 F.3d 85, 94 (3d Cir. 1996) (emphasis added) (cleaned up).

Artoss did not waive (or forfeit) its nominative fair use defense, as GmbH claims. "[A]ffirmative defenses may be raised at any time, even after trial, so long as [the opposing party] suffers no prejudice." *Clews v. County of Schuylkill*, 12 F.4th 353, 358 (3d Cir. 2021) (citation omitted). Artoss unequivocally raised this defense in its pre-trial motion, and GmbH fails to establish prejudice, offering only a broad reference to "the nuance and complexity" of a nominative fair use defense. Reply Br. 16.

GmbH's insistence that the nominative fair use defense does not apply is largely a challenge to the jury's application of the facts to the law, and it offers no compelling basis upon which to discard the relevant factual findings. Regardless, GmbH offers no pertinent caselaw to support its proposition that a new trial is required when the jury receives an instruction on an extraneous defense that accurately states the law. *See* GmbH Br. 42–43 (citing *Mosley*, 102 F.3d at 95 (instruction that "added an element of subjective intent" to the plaintiff's civil rights claims was reversible error); *Faulman v. Sec. Mut. Fin. Life Ins. Co.*, 353 F. App'x 699, 705 (3d Cir. 2009) (*not instructing* on an

indemnification clause that "was not even being relied on" by the defendant was not error) (emphasis added)).

For these reasons, GmbH fails to show the District Court abused its discretion in instructing the jury on nominative fair use.

IV

GmbH next argues that the District Court erred by excluding evidence on Artoss's disregard for first-in-first-out practices, which it describes as "highly relevant evidence establishing a good faith basis for its refusal to accept new purchase orders without prepayment." GmbH Br. 21. We need not decide whether the Court erred in excluding this evidence because any error would have been harmless. *See Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 251 (3d Cir. 2008). The Court permitted GmbH to present substantial evidence concerning Artoss's inventory practices and the resulting financial consequences. GmbH does not explain, in light of the evidence it did present, how the particular evidence excluded by the District Court was "critical" for GmbH to defend against Artoss's claims for breach of contract, *McQueeney v. Wilmington Tr. Co.*, 779 F.2d 916, 928 (3d Cir. 1985), or why Artoss's specific failure to follow first-in-first-out practices constituted a "central issue," *Renda v. King*, 347 F.3d 550, 556 (3d Cir. 2003). We thus reject GmbH's evidentiary argument.

V

GmbH makes one final argument, alleging that the District Court erred in refusing to transfer ownership of the registered trademarks "relating to NanoBone" that Artoss had filed with the Patent and Trademark Office. GmbH Br. 52. This argument fails for the

7

same reasons the Court did not err in denying judgment as a matter of law. Because the jury reasonably found that Artoss did not infringe GmbH's NanoBone trademark rights when it sought to trademark unrelated logos and slogans, the relief sought by GmbH would have directly conflicted with the jury's verdict.

* * *

The jury had sufficient evidence to conclude that GmbH wrongfully terminated the Distribution Agreement, and none of GmbH's arguments for a new trial or equitable relief is persuasive. We will affirm.